No. 2023-2374

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

ACORDA THERAPEUTICS, INC.,

*Petitioner-Appellant*,

v.

ALKERMES PLC,

*Respondent-Appellee*.

On Appeal from a Final Decision of the
U.S. District Court for the Southern District of New York,
No. 1:23-cv-00223-NRB

# APPELLEE'S RESPONSE BRIEF

Brian T. Burgess
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC 20036
(202) 346-4190

Christopher T. Holding
Jordan Bock
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, MA 02210
(617) 570-1000

May 29, 2024

*Counsel for Appellee Alkermes PLC*

# CERTIFICATE OF INTEREST

Counsel for Appellee Alkermes PLC certifies the following:

1. **The full name of the entity represented by me is:**

   Alkermes PLC

2. **The name of the real party in interest represented by me is:**

   Alkermes Pharma Ireland Limited

3. **All parent corporations and any publicly held companies that own 10% or more stock in the entity are:**

   Alkermes Ireland Holdings Limited

   Alkermes PLC

   BlackRock, Inc.

4. **The names of all law firms, partners, and associates that appeared for the entity in the trial court or agency or are expected to appear in the court (and who have not entered an appearance in this case) are:**

   Jeffrey Simes; Louis Lobel (Goodwin Procter LLP)

   David Hille (White & Case LLP)

5. **Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?**

   No.

6. **Any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees):**

   None.

May 29, 2024

*/s/ Brian T. Burgess*
Brian T. Burgess

*Counsel for Appellee Alkermes PLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................1

JURISDICTION........................................................................................6

STATEMENT OF THE ISSUES....................................................................6

STATEMENT OF THE CASE.......................................................................7

I. The Parties' Agreements And The Development of Ampyra®. ......................7

II. The Arbitration Proceedings.....................................................................10

A. The Parties' Arguments In Arbitration. ..............................................11

B. The Tribunal Rejects Acorda's Breach-Of-Contract And Antitrust Claims At Summary Judgment. .........................................12

C. The Tribunal Rejects Acorda's Request For A Refund Of Post-Expiry Voluntary Payments After A Week-Long Evidentiary Hearing. .............................................................................14

III. The District Court Proceedings. ...............................................................15

SUMMARY OF ARGUMENT .....................................................................18

STANDARD OF REVIEW ..........................................................................22

ARGUMENT ..............................................................................................23

I. This Court Lacks Jurisdiction Over This Appeal.........................................23

II. Acorda Does Not Assert A Statutorily Authorized Basis For Modification. ...........................................................................................28

III. Acorda Comes Nowhere Near The Exceedingly High Bar For Showing The Tribunal Manifestly Disregarded The Law............................34

A. The Tribunal's *Brulotte* Determination Was Not Made In Manifest Disregard Of The Law. .....................................................36

1. No controlling precedent addresses the refund question presented here. ..................................................................37

2. Acorda's arguments underscore that the Tribunal had a colorable basis for its *Brulotte* determination..........................40

**TABLE OF CONTENTS**
(continued)

**Page**

B. The Panel Did Not Manifestly Disregard The Law By Applying New York's Voluntary Payment Doctrine. ....................................... 48

1. Acorda never presented to the Tribunal its argument that federal law displaces state-law limits on restitution. ............... 49

2. The Tribunal had a colorable justification for applying the NYVPD to limit Acorda's recovery. ................................. 54

CONCLUSION ......................................................................................... 57

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIG Baker Stering Heights, LLC v. Am. Multi-Cinema, Inc.*,
579 F.3d 1268 (11th Cir. 2009) ....................30

*Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*,
2011 WL 4344437 (S.D.N.Y. Sept. 9, 2011) ....................34

*In re Arb. Between Gen. Sec. Nat'l Ins. Co.*,
785 F. Supp. 2d 411 (S.D.N.Y. 2011) ....................34

*Baley v. United States*,
942 F.3d 1312 (Fed. Cir. 2019) ....................51

*Berkowitz v. Gould Paper Corp.*,
2022 WL 118232 (S.D.N.Y. Jan. 12, 2022) ....................29, 31

*Boggild v. Kenner Prods., Div. of CPG Prods. Corp.*,
853 F.2d 465 (6th Cir. 1988) ....................24

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
489 U.S. 141 (1989)....................50

*British Ins. Co. of Cayman v. Walter St. Ins. Co.*,
93 F. Supp. 2d 506 (S.D.N.Y. 2000) ....................53

*Brulotte v. Thys Co.*,
379 U.S. 29 (1964)....................*passim*

*Chandler v. Phoenix Servs. LLC*,
1 F.4th 1013 (Fed. Cir. 2021) ....................27

*Chen v. Kyoto Sushi, Inc.*,
2021 WL 1224377 (E.D.N.Y. Apr. 1, 2021) ....................33

*Citigroup Glob. Mkts., Inc. v. Bacon*,
562 F.3d 349 (5th Cir. 2009) ....................30

*Cnty. Materials Corp. v. Allan Block Corp.*,
502 F.3d 730 (7th Cir. 2007) ....................24

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015)....................................................................................46

*Cordance Corp. v. Amazon.com, Inc.*,
727 F. Supp. 2d 310 (D. Del. 2010)..................................................................40

*In re Couvaras*,
70 F.4th 1374 (Fed. Cir. 2023) .........................................................................42

*Crawford Grp., Inc. v. Holekamp*,
543 F.3d 971 (8th Cir. 2008) ............................................................................30

*Diapulse Corp. of Am. v. Carba, Ltd.*,
626 F.2d 1108 (2d Cir. 1980) ...........................................................................31

*Dillon v. U-A Columbia Cablevision of Westchester*,
790 N.E.2d 1155 (N.Y. 2003)..................................................................12, 14, 48

*DiRussa v. Dean Witter Reynolds Inc.*,
121 F.3d 818 (2d Cir. 1997) ...............................................................25, 33, 52, 53

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
333 F.3d 383 (2d Cir. 2003) .......................................................................*passim*

*EcoServs., LLC v. Certified Aviation Servs., LLC*,
830 F. App'x 634 (Fed. Cir. 2020) ....................................................................40

*ePlus, Inc. v. Lawson Software, Inc.*,
700 F.3d 509 (Fed. Cir. 2012) ..........................................................................53

*Fahnestock & Co. v. Waltman*,
935 F.2d 512 (2d Cir. 1991) .............................................................................33

*Flex-Foot, Inc. v. CRP, Inc.*,
238 F.3d 1362 (Fed. Cir. 2001) .........................................................................22

*Forest Lab'ys, LLC v. Sigmapharm Lab'ys, LLC*,
918 F.3d 928 (Fed. Cir. 2019) ..........................................................................51

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
721 F.3d 1330 (Fed. Cir. 2013) .........................................................................46

*Gen. Dynamics Corp. v. United States*,
563 U.S. 478 (2011)....................................................................................44

*Gen. Elec. Co. v. Sargent & Lundy*,
916 F.2d 1119 (6th Cir. 1990) ......................................................................44

*Goldman v. Architectural Iron Co.*,
306 F.3d 1214 (2d Cir. 2002) ..................................................................*passim*

*Goughnour v. Hayward Baker, Inc.*,
2018 WL 265588 (N.D.W. Va. Jan. 2, 2018)....................................................40

*Grain v. Trinity Health, Mercy Health Servs. Inc.*,
551 F.3d 374 (6th Cir. 2008) .........................................................................30

*Gunn v. Minton*,
568 U.S. 251 (2013)...........................................................................23, 26, 27

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
552 U.S. 576 (2008)..............................................................................*passim*

*Halligan v. Piper Jaffray, Inc.*,
148 F.3d 197 (2d Cir. 1998) ..........................................................................33

*High Point SARL v. T-Mobile, USA, Inc.*,
640 F. App'x 917 (Fed. Cir. 2016) ...................................................................40

*Hull v. Brunswick Corp.*,
704 F.2d 1195 (10th Cir. 1983) ......................................................................25

*Jock v. Sterling Jewelers, Inc.*,
646 F.3d 113 (2d Cir. 2011) ............................................................................1

*Josephthal & Co. v. Cruttenden Roth Inc.*,
177 F. Supp. 2d 232 (S.D.N.Y. 2001) ...............................................................31

*Kaufman Malchman & Kirby, P.C. v. Hasbro, Inc.*,
897 F. Supp. 719 (S.D.N.Y. 1995) ...................................................................25

*Kimble v. Marvel Enters., Inc.*,
692 F. Supp. 2d 1156 (D. Ariz. 2010) ...............................................................38

*Kimble v. Marvel Entertainment, LLC*,
576 U.S. 446 (2015)........................................................................*passim*

*Lab'y Corp. of Am. Holdings v. Metabolite Lab'ys, Inc.*,
599 F.3d 1277 (Fed. Cir. 2010) ......................................................................26

*Levenger Co. v. Feldman*,
516 F. Supp. 2d 1272 (S.D. Fla. 2007)..............................................................45

*Mazzei v. Money Stove*,
308 F.R.D. 92 (S.D.N.Y. 2015) .......................................................................13

*Meehan v. PPG Indus., Inc.*,
802 F.2d 881 (7th Cir. 1986) ...........................................................................25

*Minerva Surgical, Inc. v. Hologic, Inc.*,
594 U.S. 559 (2021)............................................................................................38

*N.Y. Tel. Co. v. Commc'ns Workers of Am. Loc. 1100, AFL-CIO Dist. One*,
256 F.3d 89 (2d Cir. 2001) ...............................................................................33

*Overbay, LLC v. Berkman, Henoch, Peterson, Peddy & Fenchel, P.C.*,
128 N.Y.S.3d 56 (N.Y. App. Div. 2020)..........................................................48

*PC Films Corp. v. Turner Ent. Corp.*,
954 F. Supp. 711 (S.D.N.Y. 1997) ....................................................................40

*Phoenix Bulk Carriers, Ltd. v. Am. Metals Trading, LLP*,
2013 WL 5863608 (S.D.N.Y. Oct. 31, 2013)....................................................34

*Pitney Bowes, Inc. v. Mestre*,
701 F.2d 1365 (11th Cir. 1983) ........................................................................25

*Ramos-Santiago v. United Parcel Serv.*,
524 F.3d 120 (1st Cir. 2008)..............................................................................30

*Scheiber v. Dolby Lab'ys, Inc.*,
293 F.3d 1014 (7th Cir. 2002) ..........................................................................25

*Scott Paper Co. v. Mercalus Mfg. Co.*,
326 U.S. 249 (1945)....................................................................................38, 39

*Sgromo v. Scott*,
2022 WL 378669 (Fed. Cir. Feb. 8, 2022) ........................................................25

*Silver Ent. LLC v. Rabin*,
2011 WL 1097548 (S.D.N.Y. Mar. 21, 2011)...................................................34

*Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*,
57 F.4th 372 (2d Cir. 2023) ........................................................................*passim*

*St. Regis Paper Co. v. Royal Indus.*,
552 F.2d 309 (9th Cir. 1977) ...................................................................20, 45

*STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*,
648 F.3d 68 (2d Cir. 2011) .........................................................................*passim*

*Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*,
548 F.3d 85 (2d Cir. 2008), *rev'd on other grounds*, 559 U.S. 662
(2010).........................................................................................................19, 30

*Subway Int'l B.V. v. Seistola*,
2014 WL 9861978 (D. Conn. Apr. 7, 2014).....................................................34

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
592 F.3d 329 (2d Cir. 2010) ..........................................................................30

*TD Ameritrade, Inc. v. Kelley*,
2016 WL 5660399 (S.D.N.Y. Sept. 30, 2016) ..................................................29

*Tessera, Inc. v. Toshiba Corp.*,
2019 WL 5395158 (N.D. Cal. Oct. 22, 2019) ............................................43, 44

*Thys Co. v. Brulotte*,
382 P.2d 271 (Wash. 1963) .............................................................................37

*Transitron Elec. Corp. v. Hughes Aircraft Co.*,
649 F.2d 871 (1st Cir. 1981)............................................................................45

*Troxel Mfg. Co. v. Schwinn Bicycle Co.*,
465 F.2d 1253 (6th Cir. 1972) ...................................................................41, 45

*Trustees of Northeast Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Management Cooperation Funds v. Patriot Field Services, Inc.*, 2019 WL 1333256 (E.D.N.Y. Mar. 25, 2019)....33, 34

*Turner Network Sales, Inc. v. DISH Network, L.L.C.*, 413 F. Supp. 3d 329 (S.D.N.Y. 2019) ....49

*Ukshini v. Comity Realty Corp.*, 2018 WL 4625801 (S.D.N.Y. Sept. 26, 2018) ....34

*Van Buren v. Cargill, Inc.*, 2016 WL 231399 (W.D.N.Y. Jan. 19, 2016)....34

*Wallace v. Buttar*, 378 F.3d 182 (2d Cir. 2004) ....*passim*

*Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200 (2d Cir. 2002) ....47, 54

*Whitfield v. Jones*, 2013 WL 6183096 (S.D.N.Y. Nov. 15, 2013)....34

*Xitronix Corp. v. KLA-Tencor Corp.*, 882 F.3d 1075 (Fed. Cir. 2018) ....18, 23, 26

*XY, LLC v. Trans Ova Genetics, LC*, 2020 WL 2128739 (D. Colo. May 5, 2020) ....40

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15 (2d Cir. 1997) ....33

*Zila, Inc. v. Tinnell*, 502 F.3d 1014 (9th Cir. 2007) ....25, 43, 44

**Statutes**

9 U.S.C. § 10....15, 30

9 U.S.C. § 11 ....1, 28

9 U.S.C. § 11(b) ....29

9 U.S.C. § 11(c) ....29

28 U.S.C. § 1295(a)(1) .......... 6, 23

28 U.S.C. § 1631 .......... 23

**Other Authorities**

Restatement (Second) of Contracts § 197 .......... 44

Restatement (Second) of Contracts § 198 .......... 44

Restatement (Third) of Restitution § 32 .......... 44

United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517, 330 U.N.T.S. 38 .......... 15

# TABLE OF ABBREVIATIONS

| **Term** | **Abbreviation** |
|---|---|
| ’938 Patent | U.S. Patent No. 5,540,938 |
| Agreements | The Amended and Restated License Agreement and the Supply Agreement |
| FAA | Federal Arbitration Act |
| NYVPD | New York Voluntary Payment Doctrine |

## STATEMENT OF RELATED CASES

No other appeal in or from the same civil action was previously before this Court or any other appellate court. There is no case known to counsel to be pending in this or any other court that will directly affect or be directly affected by this Court's decision in this appeal.

# INTRODUCTION

Judicial authority to disturb an arbitration award under the Federal Arbitration Act (FAA) is exceptionally limited. "More searching review would frustrate the basic purpose of arbitration, which is to dispose of disputes quickly and avoid the expense and delay of extended court proceedings." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) (alteration and quotation marks omitted). This is consistent with the emphatic federal policy in favor of enforcing arbitral awards. *See Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113, 121 (2d Cir. 2011). Those principles govern here and require this Court to affirm the district court's decision.

In this case, Acorda Therapeutics seeks to "modify" an arbitration award unanimously entered by a panel of three distinguished retired judges, including a former member of this Court, as Acorda asks the Court to add over $65 million to its recovery. But the FAA enumerates the exclusive and narrow grounds for modifying an arbitral award, which Acorda never invokes and are not even arguably satisfied here. 9 U.S.C. § 11. Instead, Acorda premises its challenge on the notion that the panel "manifestly disregarded" clear law in concluding that Acorda could only recover a refund of the royalty payments it timely protested. As the district court recognized, however, the "manifest disregard" doctrine does not apply to modification requests. Appx14. Even if the doctrine were theoretically available, it

plainly is not satisfied. Manifest disregard is a "severely limited" doctrine of "last resort," applicable "only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (quotation marks omitted).[1] The suggestion that the Tribunal committed such an impropriety here is unserious and must be rejected.

The parties' underlying dispute arose from two agreements (the License Agreement and the Supply Agreement) executed in relation to the co-development, marketing, and commercial supply of the multiple sclerosis drug Ampyra®. Under the License Agreement, Acorda had to pay Alkermes a 10% royalty in exchange for a license to Alkermes's patent estate, including U.S. Patent No. 5,540,938 ("the '938 Patent") and know-how. Under the Supply Agreement, Acorda paid an additional 8% royalty in exchange for Alkermes's manufacture and supply of Ampyra®. After the '938 Patent expired in 2018, Acorda continued to pay royalties under both agreements without protest until July 2020. At that point, despite having been aware of the 2018 expiration date years in advance, Acorda asserted for the first time that the ongoing royalty under the License Agreement was unlawful under *Brulotte v. Thys Co.*, 379 U.S. 29 (1964). Acorda raised no such protest regarding its royalty obligation under the Supply Agreement, and continued to place orders for the

[1] As Acorda recognizes (at 24-25), both the applicability and scope of the manifest disregard doctrine is governed by Second Circuit law.

manufacture and supply of products that it then sold into the market. Appx40. Alkermes disagreed with Acorda's position on the License Agreement, arguing that the royalty fell within multiple recognized *Brulotte* exceptions. Acorda continued to pay both royalties and initiated arbitration.

After a two-plus year arbitration proceeding, the panel issued a unanimous Award. The Tribunal concluded that both the License Agreement and the Supply Agreement were unenforceable going forward under *Brulotte*. As to the separate question of remedy for past payments, the Tribunal found that Acorda was entitled to restitution recovering post-expiration royalties, but only those it paid under protest. The parties' agreements are governed by New York law, and the Tribunal determined that New York's "Voluntary Payment Doctrine" ("NYVPD") foreclosed recovery on payments Acorda made without protest. The Tribunal thus awarded $16,554,267, plus $1,689,528 in pre-judgment interest, which Alkermes has paid (as Acorda has acknowledged).

Despite prevailing on its *Brulotte* claim and receiving over $18 million, Acorda turned to the federal courts in an effort to reverse the one part of the Tribunal's decision that did not go its way. In furtherance of its arguments, Acorda not only misstates the record by reciting factual assertions pressed in a claim the panel considered and *dismissed*, but also fundamentally misconstrues the limited role of courts under the FAA. The only objection Acorda raises to the Tribunal's

award—the "manifest disregard" doctrine—does not even provide a basis for modification. Even putting that aside, the Tribunal's award must be left in place so long as there is a "*barely colorable justification* for the outcome reached." *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 383 (2d Cir. 2023). That standard is plainly satisfied here.

Acorda tries to extrapolate from *Brulotte* and *Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446 (2015), a mandatory restitution rule that neither decision had any occasion to consider, much less embrace. As the district court below recognized (Appx 18-19), the only federal court decisions to address the issue of royalty refunds *rejected* Acorda's position. Acorda contends that one of those cases was "wrongly decided" and tries to distinguish others. Acorda Br. 34-35. But aside from being unpersuasive on the merits, Acorda's need to resort to such arguments shows why it cannot succeed. For a court to intervene with an arbitration decision, an error must be so obvious it "should have [been] instantaneously perceived and corrected" by any competent arbitrator. *Smarter Tools*, 57 F.4th at 383. Merely to state the controlling standard is to show why it is not satisfied here. The existing case law provided the Tribunal more than a "colorable basis" for its decision, as there is no rule (let alone a well-defined and explicit rule) compelling refund of all royalties in the event of a *Brulotte* violation. The federal courts thus cannot disturb the Tribunal's decision.

Going even further astray, Acorda urges the Court to reverse the arbitration panel based on arguments about federal common law and preemption that Acorda failed to clearly raise in arbitration. Acorda asks the Court to consider these new arguments in the first instance, first suggesting that the scant citations in Acorda's arbitration submissions were sufficient, and then alternatively insisting the Court has discretion to overlook forfeiture. Acorda's position is clearly wrong, and it again reveals a basic misunderstanding of the FAA. The FAA does not provide courts with supervisory authority to address unpreserved arguments merely because, for example, the issues are "significant" or implicate questions of "substantial justice." Acorda Br. 48. To the contrary, the manifest disregard standard can only be satisfied if the arbitrators "ignored" a clearly controlling legal principle "after it was brought to the arbitrator[s'] attention in a way that assures that the arbitrator[s] knew its controlling nature." *Goldman v. Architectural Iron Co.,* 306 F.3d 1214, 1216 (2d Cir. 2002). That standard leaves no room for this Court to second-guess the Tribunal based on arguments that were not clearly and expressly raised during arbitration.

Acorda pitches this appeal as raising "substantial questions of federal patent law," as it tries to create precedent on *Brulotte*'s reach. Acorda Br. 2. But the case is controlled by the FAA, not broad appeals to patent policy. Indeed, as explained below, it is the Appellee's position that the Court lacks jurisdiction because

Acorda's action does not arise under the federal patent laws. If the Court does exercise jurisdiction, however, it should affirm.

## JURISDICTION

This case does not "aris[e] under[] any Act of Congress relating to patents," and this Court therefore lacks jurisdiction under 28 U.S.C. § 1295(a)(1). Alkermes previously moved to transfer the appeal to the Second Circuit on this basis. This Court denied the motion without prejudice and "directed [the parties] to address the court's jurisdiction in their merits briefs." ECF No. 22. Alkermes details its jurisdictional objections in the Argument section below. *See* pp. 23-27, *infra*.

## STATEMENT OF THE ISSUES

1. Whether this Court has jurisdiction over this appeal, which challenges the remedy awarded in an arbitration under the FAA, and where the underlying arbitration arose from a dispute over the enforceability of license agreements and royalty obligations.

2. Whether the district court properly held that the manifest disregard doctrine provides no basis for modifying an arbitral award under Second Circuit precedent.

3. Whether the Tribunal manifestly disregarded clearly applicable law by determining that Acorda was not entitled to a refund of its voluntary post-expiration

patent royalties when there is no decision from any court requiring restitution in those circumstances and several courts have held that such refunds are not required.

4. Whether the Tribunal manifestly disregarded clearly applicable law by applying the NYVPD to limit Acorda's recovery of post-expiration patent royalties when (1) Acorda never argued to the Tribunal that federal law controlled Acorda's recovery of royalties, let alone that federal law preempted the NYVPD, and (2) there is no controlling federal precedent establishing that federal law requires restitution and displaces all state-law limits on recovery in those circumstances.

## STATEMENT OF THE CASE

### I. The Parties' Agreements And The Development of Ampyra®.

Acorda and Alkermes worked together to develop and obtain FDA approval for Ampyra®, a prescription medicine indicated to improve walking speed in people with multiple sclerosis. Appx320 (¶ U9), Appx343 (¶ R47), Appx354 (¶ R97), Appx357 (¶ U22), Appx359 (¶ R113). Both companies developed aspects of the product and contributed portions of the application submitted to the FDA. Following FDA approval in 2010, Acorda has sold Ampyra®, manufactured by Alkermes, in the United States. Appx357 (¶¶ U21-22), Appx359 (¶ R112), Appx364 (¶ R125).

The arbitration underlying this case arose from a dispute concerning payments Acorda owed to Alkermes. The parties' relationship was governed by two agreements related to Ampyra®: (1) the Amended and Restated License Agreement

("License Agreement"), and (2) the Supply Agreement (collectively, "the Agreements"). Appx39. The parties agreed that New York law governs their dispute. Appx50 n.10.

Under the License Agreement, Alkermes licensed to Acorda various patents rights and know-how associated with Alkermes's extended-release formulation for Amypra® in return for Acorda paying Alkermes a royalty of 10% of the Net Sales Price of Ampyra®, plus other lump-sum payments. Appx152-156 (§§ 5.2, 5.3, 5.6). The licensed rights included those to Alkermes's '938 Patent, which Acorda needed "to develop and market the pharmaceutical that eventually became known as Ampyra®." Appx38. The License Agreement also contained a "no-refund" provision that restricted Acorda's ability to claw back royalties once they were paid. Appx156 (§ 5.8) (providing that "[a]ll payments received by [Alkermes] shall be non-refundable ...."). Under the Supply Agreement, Alkermes agreed to "manufacture and supply at least 75% of the Ampyra product Acorda needed" in exchange for "an additional 8%" royalty. Appx39; *see* Appx211 (§ 7.2), Appx214 (§ 9.3.1).

In July 2018, the '938 Patent expired—which the Tribunal found was "no surprise to either party." Appx39. Acorda continued to order Ampyra® tablets from Alkermes and continued making payments under the Agreements without objection for nearly two years. Appx39-40. It was not until April 2020 that Acorda first

suggested to Alkermes that the expiration of the ’938 Patent rendered the License Agreement’s royalty obligation unenforceable under *Brulotte*, which holds that a patent owner cannot charge the same patent royalty post-patent expiry as pre-patent expiry, unless an exception applies. 379 U.S. at 32; Appx274 n.8. Alkermes disagreed with Acorda’s position, arguing that the ongoing royalty was permissible under recognized *Brulotte* exceptions (*e.g.*, for a collaborative business relationship). Contrary to Acorda’s baseless assertions of coercion (*e.g.*, Acorda Br. 11),[2] Alkermes never forced Acorda to make payments. Indeed, Acorda always had available the option it eventually took—making payments under protest.

In April 2020, Acorda sent a letter to Alkermes that mentioned *Brulotte* for the first time. Appx274. In July 2020, Acorda submitted a purchase order to Alkermes that, for the first time, formally protested the payment of royalties under the License Agreement based on *Brulotte* and stated that Acorda would continue to pay royalties under protest. Appx41-42, Appx50-51. Notably, “for whatever reason,” Appx52, Acorda expressly limited its *Brulotte* objection in both the April letter and July purchase order (and all subsequent purchase orders) to the 10%

[2] Acorda cites to briefing submitted to the Tribunal to support factual allegations that the Tribunal did *not* adopt. *See, e.g.*, Acorda Br. 11, 36 n.21. Indeed, Acorda’s coercion allegations were made in the context of antitrust claims that the Tribunal dismissed at summary judgment, a decision Acorda has not challenged in these proceedings. Appx279-281. The Court should disregard Acorda’s attempt to rewrite the factual record in defiance of the Tribunal’s decision.

royalty under the License Agreement; it "never formally protested" its payments under the Supply Agreement. Appx51. Acorda continued ordering Ampyra® from Alkermes and paying the full 10% and 8% royalties owed under the Agreements. Appx40.

## II. The Arbitration Proceedings.

In July 2020, Acorda instituted the underlying arbitration proceeding against Alkermes. Appx34. The Tribunal was composed of three former judges: Arthur Gajarsa (Fed. Cir.), Hon. Jose Linares (D.N.J.), and Robert Smith (N.Y. Ct. App.). In its Demand, Acorda sought a declaration that the 10% payment obligations under the License Agreement and the 8% payment obligations under the Supply Agreement were unenforceable under *Brulotte*, and that Acorda was entitled to recover all the payments it had made under the Agreements after expiration of the '938 Patent. Appx34-35. Acorda also brought breach-of-contract and antitrust claims. Appx34-35.

The issues raised in Acorda's Demand were developed in extensive arbitration proceedings. Appx35-37. The parties exchanged more than 700,000 pages of documents, took 13 fact depositions, and presented reports from nine expert witnesses, who also were deposed. There was also substantial motions practice, and the Tribunal presided over a five-day evidentiary hearing. Appx35-37.

### A. The Parties' Arguments In Arbitration.

In the arbitration, Alkermes disputed whether any of Acorda's royalty obligations violated *Brulotte*. Appx508-513.[3] The proceeding also extensively examined the issue of remedy, and whether, even assuming the Tribunal found a *Brulotte* violation, Acorda could obtain a refund of post-expiration royalties it had paid to Alkermes without protest. Alkermes first argued that *Brulotte* itself does not require the refund of royalties paid after patent expiration, but provides only that an offending contract be rendered "unenforceable" prospectively. *See, e.g.*, Appx584-585. Second, Alkermes argued that Acorda was not entitled to recover post-expiration royalties because that recovery was barred by the License Agreement's "no refund" clause, providing that "[a]ll payments received by [Alkermes] from Acorda … shall be non-refundable." *See, e.g.*, Appx577-578; Appx156 (§ 5.8). Third, Alkermes argued that Acorda could not recover royalties paid without protest because that recovery was precluded by the New York Voluntary Payment Doctrine (NYVPD). *See, e.g.*, Appx586-593. That doctrine, which originated in New York

[3] In particular, Alkermes argued that the License Agreement contained a step-down in royalty rate that is permissible under *Brulotte*, that Alkermes's collaboration agreement with Acorda qualified under the joint-venture exception to *Brulotte*, and that the License Agreement's royalty was permissible in any event because there was no evidence that Alkermes negotiated the royalty by using patent leverage and the ongoing royalties applied to the know-how Alkermes continued to license to Acorda. Appx508-513.

common law but was later codified, "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillon v. U-A Columbia Cablevision of Westchester*, 790 N.E.2d 1155, 1156 (N.Y. 2003).

In response, Acorda never asserted that *Brulotte* itself categorically requires the repayment of post-expiration royalties, whether or not made under protest. Instead, Acorda argued that *Brulotte* did not *preclude* such a remedy under state law, and that Acorda could recover the post-expiration royalties as a form of contract damages, restitution, and/or unjust enrichment. *See* Appx253-260, Appx297-300, Appx632-639, Appx670-672. Acorda likewise never argued that *Brulotte* or any other principle of federal law preempted or otherwise prevented the Tribunal from applying the NYVPD. Nor did Acorda identify federal common law as the source of the purported legal obligation for Alkermes to refund post-expiration royalties.

**B. The Tribunal Rejects Acorda's Breach-Of-Contract And Antitrust Claims At Summary Judgment.**

The Tribunal granted Alkermes's motion for summary judgment on Acorda's breach-of-contract and antitrust claims. Appx270-273, Appx279-281. As to the antitrust claims, the Tribunal found that Acorda failed to show that Alkermes had engaged in anticompetitive conduct or that the royalties limited consumer choice, resulted in increased prices, reduced output, or reduced quality. Appx279-281. Thus, whereas Acorda repeats (at 36 n.21) its *allegation* that paying post-expiry

royalties caused it to lose sales, the Tribunal made no such finding. In fact, the evidence showed that Acorda's post-expiry sales far exceeded its own projections. Appx374.

On the question of remedies, the Tribunal addressed the parties' cross-motions on whether Acorda could be entitled to a refund of post-expiration royalties under theories of restitution or unjust enrichment if Acorda proved a *Brulotte* violation. Appx273-276. The Tribunal recognized that, under New York law, "restitution damages may be awarded where a party 'renders performance under an agreement that is illegal or otherwise unenforceable for reasons of public policy.'" Appx274 (quoting *Mazzei v. Money Stove*, 308 F.R.D. 92, 106 (S.D.N.Y. 2015), *aff'd*, 829 F.3d 260 (2d Cir. 2016)). However, the Tribunal held that the no-refund clause of the License Agreement was also operative, and thus "waive[d] liability for a refund … where no protest is made." Appx274. Because the undisputed facts showed that "Acorda's first real objection to the royalty rate was on April 22, 2020," and its "first payment under protest was not made until July 2020," the Tribunal concluded that "if Acorda [was] successful on its *Brulotte* claim," it could "recover unjust enrichment/restitution damages" for royalties paid after July 2020. Appx274 & n.8. But, the Tribunal held, Acorda could not recover royalties paid before that date due to Acorda's lack of protest. Appx275. The Tribunal also addressed the NYVPD, recognizing it also "might preclude any refund remedy for payments by

Acorda that were made voluntarily." Appx274-275. But the Tribunal chose not to address the issue "in detail" on summary judgment, because its analysis regarding the no-refund clause "render[ed] such a refund unavailable in any event for those payments made prior to July of 2020." Appx274-275.

### C. The Tribunal Rejects Acorda's Request For A Refund Of Post-Expiry Voluntary Payments After A Week-Long Evidentiary Hearing.

Following the five-day evidentiary hearing, the Tribunal issued a reasoned 23-page Award. To start, the Tribunal concluded that the royalty obligations of the License Agreement following expiry of the '938 Patent violated *Brulotte* and declared the License Agreement "unenforceable." Appx40-49. The Tribunal also declared the Supply Agreement unenforceable because the two agreements "operate as a single unified business agreement." Appx49.

The Tribunal then addressed Acorda's claim for a refund of post-expiration royalties under a theory of restitution/unjust enrichment. Appx49-52. As the Tribunal explained, it had already determined that Acorda could "only recover payments it remitted after the July 2020 protest." Appx50. Focusing its reasoning this time on the NYVPD rather than the no-refund clause, the Tribunal explained that "payments that are 'made with full knowledge of the facts, even if made under mistake of law,' are not recoverable." *Id.* (quoting *Dillon*, 790 N.E.2d at 526). The Tribunal thus reiterated its prior conclusion that "Acorda may only recover payments

it remitted after the July 2020 protest." *Id.* As a result, the Tribunal considered only the amount due following Acorda's formal protest. *Id.* On that score, the Tribunal held that Acorda had paid the 10% royalty under the License Agreement under protest starting in July 2020, and so awarded Acorda a refund of all of those payments, totaling $16.5 million, plus interest. *Id.*

With respect to royalties paid under the Supply Agreement, the Tribunal "reache[d] the opposite conclusion." Appx51. The Tribunal discussed the evidence in detail and found that the April 2020 letter "only protest[s] the royalties under the License Agreement" and "the July 2020 protest letter … explicitly only referenced the License Agreement." *Id.* Thus, the Tribunal found it "clear that Acorda *never* formally protested the payments it made under the Supply Agreement" for the products Alkermes manufactured and delivered. *Id.* (emphasis added). As a result, it held that "Acorda is not entitled to recover any payments under the Supply Agreement as such recovery is barred by the NYVPD." Appx52. Alkermes has paid the full amount owed under the Award. Appx91 (¶ 40).

**III. The District Court Proceedings.**

Acorda filed a petition in the U.S. District Court for the Southern District of New York under the FAA, 9 U.S.C. §§ 10-12, 201-208, and the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517, 330 U.N.T.S. 38. *See* Appx78-79 (¶¶ 1-2). The petition

sought to "modify" the Award under Section 11 of the FAA to include an additional $65,629,716 in royalties—the amount of royalties the Tribunal had excluded because Acorda paid them voluntarily and without protest—and then to confirm the revised Award. Appx93 (¶ 52); *see* Appx8-9. But rather than rely on any enumerated ground for modification in Section 11, Acorda asserted that the Tribunal's decision rejecting Acorda's request for a larger refund of royalties was a "manifest disregard of law." Appx92 (¶ 43). According to the petition, the Tribunal's award "gave effect to unlawful agreements that it [had] found were in violation of public policy." Appx92 (¶ 44).

The district court (Buchwald, J.) denied Acorda's petition and confirmed the Award in its entirety. Appx1-20. As a threshold matter, the court noted that despite seeking partial modification of the Award, Acorda did "not assert any of the FAA's statutory bases for modification." Appx13-14. The district court also agreed with Alkermes that "since the Supreme Court cast doubt" on the "manifest disregard" doctrine, the doctrine has "only been recognized by the Second Circuit as a basis for vacatur, not modification." Appx14. And the court cited with approval decisions within the Second Circuit describing requests like Acorda's for partial modification as "inappropriate gamesmanship," and explaining that "'[m]anifest disregard of the law,' … will simply never justify a request to modify an arbitration award, only as grounds to vacate." *Id.* (quotation marks omitted). But the district court determined,

"[i]n any event," that even if the doctrine were theoretically available, it could not assist Acorda because "the Tribunal did not manifestly disregard the law." Appx14-19.

*First*, the district court rejected Acorda's argument that the Tribunal manifestly disregarded the law in concluding that *Brulotte* does not require a refund of past-paid royalties. Appx15-18. As the court recognized, "*Brulotte* and its progeny do not provide clear guidance on whether royalties that have already been paid under offending contracts are recoverable," and so the court could not "conclude that the Tribunal refused to apply a clear legal principle on that issue." Appx16-17. That conclusion was "further supported by some district courts' post-*Brulotte* holdings that [] royalties paid after the expiration of a patent should not be refunded." Appx18.

*Second*, the court rejected two "new" arguments Acorda never made to the Tribunal—that "the NYVPD is pre-empted by federal patent law" and that "the Tribunal manifestly disregarded the law by giving effect to an illegal contract." Appx19. The court rejected the first argument both because Acorda never "raised [it] before the Tribunal," and based on its conclusion that "*Brulotte* and its progeny have not clearly articulated a rule on the refund of royalties." Appx19. In addition, the court observed that Acorda had mischaracterized the record: "Contrary to Acorda's suggestion, the Tribunal did *not* 'squarely reject' Alkermes' attempt to rely

on the NYVPD in its summary judgment decision." Appx17 n.5. The district court then rejected the second argument because "the Tribunal held that *Brulotte* did, in fact, render the Agreements unenforceable" and so did not "uphold[] the Agreements." Appx19. As the court explained, "[t]he Tribunal's decision to limit restitution to payments made under protest is not equivalent to upholding the Agreements." *Id.*

This appeal followed.

## SUMMARY OF ARGUMENT

I. This Court lacks jurisdiction over the appeal because Acorda's FAA petition does not necessarily raise a substantial question of patent law. *See Xitronix Corp. v. KLA-Tencor Corp.*, 882 F.3d 1075, 1076 (Fed. Cir. 2018). Acorda asserts that the Court will need to resolve whether *Brulotte* and its progeny dictate that a patent owner must disgorge royalties it receives on an expired patent, and, if so, whether this principle preempts any differing state law. But this is an appeal from an arbitration: the question for this Court is solely whether there was at least "a barely colorable justification" for the Tribunal's decision. *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004). Answering that narrow, case-specific question does not present a substantial question of patent law.

II. This Court does not have the authority to modify the underlying Award based on the grounds Acorda has asserted. Section 11 provides the "exclusive

grounds" for modifying an arbitration award, *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008). Acorda does not raise any of these statutory bases for modification, instead invoking the manifest disregard doctrine. In the Second Circuit, however, manifest disregard is a basis only for vacatur under Section 10, not for modification under Section 11. *See Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 94-95 (2d Cir. 2008), *rev'd on other grounds*, 559 U.S. 662 (2010). Moreover, the remedy that Acorda seeks—the inclusion of damages the Tribunal expressly withheld based on the Tribunal's analysis of *Brulotte*—is plainly incompatible with Section 11.

III. Even if the manifest disregard doctrine theoretically could apply to modification requests, the standard for manifest disregard plainly is not satisfied here. Acorda comes nowhere near showing that this is one of "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *Smarter Tools*, 57 F.4th at 383.

A. *Brulotte* and its progeny hold that a patent licensing agreement that extends beyond the expiration date of the patent is generally unenforceable. But the decisions say nothing about whether and under what circumstances a licensee is entitled to a refund for payments voluntarily made following the patent's expiration. Indeed, neither *Brulotte* nor *Kimble* had any occasion to consider the issue, as neither case involved any post-expiration royalty payments.

Unable to ground its argument in existing case law, Acorda raises various arguments for why it "necessarily follows" from *Brulotte* that restitution is required in this case. Acorda Br. 31-32. But its arguments are wholly disconnected from the FAA standard of review. Acorda cannot identify a single decision endorsing its theory that it is entitled to restitution for the payments it voluntarily made following the expiration of the patent. To the contrary, the only cases discussing this issue have agreed *with Alkermes*. Acorda variously tries to distinguish those adverse decisions or argue that they are unpersuasive, but such contentions miss the point. Under the FAA, courts must enforce an arbitral award if there is a "barely colorable justification" for the arbitrators' decision. *Wallace*, 378 F.3d at 190. The fact that some federal courts have agreed with Alkermes's (and the Tribunal's) reading of precedent—whereas no courts have endorsed Acorda's rule—conclusively establishes that there was no manifest disregard of clear law by the Tribunal. Indeed, the Tribunal's decision here aligns with the general rule that when a patent is held unenforceable—due, for example, to inequitable conduct or invalidity—the licensee is *not* entitled to restitution for payments it made prior to bringing suit. *E.g.*, *St. Regis Paper Co. v. Royal Indus.*, 552 F.2d 309, 313 (9th Cir. 1977).

B. Nor did the panel manifestly disregard the law by applying the NYVPD. As the district court explained, Acorda forfeited its claim that the NYVPD is preempted by federal law by failing to clearly raise that specific argument before

the Tribunal. Acorda relied exclusively on state law before the Tribunal, arguing that New York law on unjust enrichment allowed it to recover post-expiration royalties made without protest. Appx250-253, Appx632-639. Acorda's response—a single passing citation to the Supremacy Clause in the context of describing the holding of *Brulotte*—is plainly inadequate.

Acorda alternatively suggests that this Court has discretion to overlook its forfeiture, but this argument misunderstands the manifest disregard standard. Manifest disregard occurs only when "the arbitrator must have known of [the law's] existence, and its applicability to the problem before him." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390 (2d Cir. 2003). If a legal principle was never "brought to the [Tribunal's] attention," let alone "in a way that assures that the [Tribunal] knew its controlling nature," then there can be no manifest disregard of the law. *Goldman*, 306 F.3d at 1216.

In any event, even if Acorda's new preemption theory had been asserted to the Tribunal, the panel would not have manifestly disregarded clear law by declining to adopt it. Nothing in conflict preemption dictates that state-law limits on retrospective remedies for a *Brulotte* violation somehow stand as an obstacle to the objectives of the patent laws. Acorda's unsupported theory would prevent states from applying *any* limitations on recovery, including limitations period or laches to limit recovery. Unsurprisingly, Acorda has no support for such a theory.

## STANDARD OF REVIEW

Second Circuit law governs the standard of review under the FAA. *See Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365 (Fed. Cir. 2001). "When a party challenges the district court's review of an arbitral award under the manifest disregard standard, [the Second Circuit] review[s] the district court's application of the standard *de novo*." *Wallace*, 378 F.3d at 189.

A litigant challenging an arbitral award "based on alleged manifest disregard of the law bears a heavy burden, as awards are vacated on [this] ground[] … only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *Smarter Tools*, 57 F.4th at 383; *see also Wallace*, 378 F.3d at 191 (noting the "sobering odds" facing a party seeking to vacate an arbitral award). Thus, a court's "review under the doctrine of manifest disregard is 'severely limited,'" *Duferco*, 333 F.3d at 389, and "'highly deferential' to the arbitrators"—rendering "relief on such a claim … 'rare,'" *STMicroelectronics*, 648 F.3d at 78. In particular, a court may not interfere with an arbitral award unless there is law that is "clear, and in fact explicitly applicable to the matter before the arbitrators," *Duferco*, 333 F.3d at 389-90, which was "brought to [their] attention in a way that assures that [they] knew its controlling nature," *Goldman*, 306 F.3d at 1216. So long as there is "a barely colorable justification" for the Tribunal's decision, it must be enforced. *Wallace,* 378 F.3d at 190.

# ARGUMENT

## I. This Court Lacks Jurisdiction Over This Appeal.

As Alkermes previously argued in its motion to transfer (ECF No. 9), the Court should transfer this appeal to the Second Circuit under 28 U.S.C. § 1631 because the Court lacks jurisdiction.

This Court has appellate jurisdiction over only a narrowly defined set of appeals. As relevant here, the Court has jurisdiction over appeals from "a final decision of a district court … in any civil action arising under, or in any civil action in which a party has asserted a compulsory counterclaim arising under, any Act of Congress relating to patents." 28 U.S.C. § 1295(a)(1). There are two avenues for a "civil action" to "aris[e] under" the federal patent laws. *First*, the "[m]ost direct[]" avenue is if federal patent law "creates the cause of action." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). *Second*, in a "special and small category of cases," *id.* at 258 (quotation marks omitted), an action may arise under patent law, even though another source of law creates the cause of action. In that scenario, "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law." *Xitronix*, 882 F.3d at 1076. In other words, the lawsuit must involve a question of patent law that is "necessarily raised" and "substantial." *Gunn*, 568 U.S. at 258.

Here, all agree that federal patent law does not create Acorda's cause of action

under the FAA. Acorda instead tries to establish jurisdiction only through the narrow second path. In Acorda's view, this case presents "two substantial questions of federal patent law"—whether *Brulotte* and *Kimble* require a patent owner to disgorge royalties received post-expiry, and, if so, whether this principle preempts any state law that does not require restitution. Acorda Br. 2. But because this is an appeal from a petition for review under the FAA, those questions are indisputably *not* before the Court, despite Acorda's repeated efforts to suggest otherwise.

To begin with, the arbitration itself arose from a dispute regarding the parties' respective rights and obligations under two contracts—not an effort to enforce any patent. And although Acorda relied on *Brulotte* as grounds for cutting off its royalty obligation after the '938 Patent expired (Appx3-4; Appx83 (¶ 16)), the mere invocation of *Brulotte* does not convert an action under a contract into one that arises under the patent laws. Rather, courts have recognized that in disputes over the "enforceability of a contract or license agreement" premised on allegations of patent misuse, jurisdiction belongs in the regional circuits, as an appeal "does not necessarily require resolution of substantial questions of federal patent law." *Cnty. Materials Corp. v. Allan Block Corp.*, 502 F.3d 730, 733-34 (7th Cir. 2007) (quotation marks and alteration omitted); *accord Boggild v. Kenner Prods., Div. of CPG Prods. Corp.*, 853 F.2d 465, 468 (6th Cir. 1988) (holding that a "challeng[e] [to] the validity of a licensing agreement" under *Brulotte* "is a contractual dispute,

and not an action arising under the patent laws"); *Kaufman Malchman & Kirby, P.C. v. Hasbro, Inc.*, 897 F. Supp. 719 (S.D.N.Y. 1995) (similar). Indeed, it is routine for the regional circuits to hear appeals presenting *Brulotte* arguments.[4]

But even if a claim premised on *Brulotte* raised in ordinary district court litigation could support jurisdiction under section 1295(a)(1), the same reasoning does not extend to this FAA action. This Court would not address *de novo* any question regarding *Brulotte*'s scope. Rather, the question presented is whether the Court should order modification of an arbitral award on the theory that the Tribunal "manifestly disregarded" controlling law, which is a "severely limited" standard of review. *Duferco*, 333 F.3d at 388-89; *see also Sgromo v. Scott*, 2022 WL 378669, at *2 (Fed. Cir. Feb. 8, 2022) ("[T]he standards for vacatur under the … FAA … do not require analysis of patent law."). And a reviewing court must make that assessment based on the arguments that actually had been presented to the Tribunal, not—as Acorda tries to do here—by considering new arguments or by articulating a new legal rule. *See* pp. 51-52, *infra*; *see also Goldman*, 306 F.3d at 1216; *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 823 (2d Cir. 1997).

At a minimum, the narrow FAA claim that Acorda advances here does not

[4] *See, e.g.*, *Zila, Inc. v. Tinnell*, 502 F.3d 1014 (9th Cir. 2007); *Scheiber v. Dolby Lab'ys, Inc.*, 293 F.3d 1014 (7th Cir. 2002); *Meehan v. PPG Indus., Inc.*, 802 F.2d 881 (7th Cir. 1986); *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365 (11th Cir. 1983); *Hull v. Brunswick Corp.*, 704 F.2d 1195, 1202 (10th Cir. 1983).

raise a question of patent law that is "substantial." *Gunn*, 568 U.S. at 260. "The substantiality inquiry … looks … to the importance of the issue to the federal system as a whole," rather than its significance "to the particular parties in the immediate suit." *Id*. No such issue of general patent significance exists here, either in determining whether the manifest disregard standard is a proper basis for modifying an arbitral award or in adjudicating Acorda's FAA action challenging whether there was a colorable basis to support the Tribunal's ruling on the size of a refund in a royalty dispute.

Here, the district court did not—and no appellate court will be required to—resolve any core question of patent law. The only patent relevant to this case (the '938 Patent) expired in July 2018, p. 8, *supra*, and deciding this appeal will not have any bearing on it. *Cf. Gunn*, 568 U.S. at 264-65 (no jurisdiction where resolution of the case "will not even affect the validity of [the] patent"); *Xitronix*, 882 F.3d at 1078 ("Patent claims will not be invalidated or revived based on the result of this case"); *Lab'y Corp. of Am. Holdings v. Metabolite Lab'ys, Inc.*, 599 F.3d 1277, 1283-84 (Fed. Cir. 2010) (no patent jurisdiction where "[t]he issue of infringement … ha[d] been resolved and [wa]s no longer disputed" and the court therefore faced "no disputed issue of patent law"). Nor will a decision on appeal alter the enforceability of the royalty provisions in the parties' agreements; again, the Tribunal concluded that *Brulotte* rendered the royalty provisions unenforceable and both parties sought

to confirm that portion of the Award. *See* pp. 14-16, *supra*; *accord Chandler v. Phoenix Servs. LLC*, 1 F.4th 1013, 1018 (Fed. Cir. 2021) (finding no jurisdiction where "[t]he patent … has already been ruled unenforceable" and "[t]his case will not alter the validity of the … patent").

Nor will a decision in this case establish a general precedent about the reach of *Brulotte* and its implications for retrospective remedies. Fidelity to the FAA's exceptionally narrow standard of review precludes such guidance. An appellate court's determination whether the Tribunal had at least a "barely colorable justification, " *Wallace*, 378 F.3d at 189-90, for declining to award certain past-paid royalties under New York law "will not stand as binding precedent," *Gunn*, 568 U.S. at 264, on any question of patent policy beyond this case. A later court addressing the issue *de novo*, rather than under the "highly deferential" FAA standard, *STMicroelectronics*, 648 F.3d at 78, will not be bound by this Court's resolution of the issue.

In short, the question presented in this FAA action is not of "importance … to the federal [patent] system as a whole," and its resolution in the Second Circuit will not "undermine 'the development of a uniform body of patent law.'" *Gunn*, 568 U.S. at 260-61 (alterations omitted). It is also worth noting that in its zeal to have this Court assert jurisdiction, Acorda has badly damaged the merits of its appeal. Acorda's position that there is a "substantial question" of law for this Court to

address proves that there was no clear statement of law for the arbitral Tribunal to disregard. The two notions are completely incompatible.

## II. Acorda Does Not Assert A Statutorily Authorized Basis For Modification.

Invoking the manifest disregard doctrine, Acorda asks the Court to modify the Tribunal's Award by including voluntary payments of post-expiry royalties predating its formal protest. *E.g.*, Acorda Br. 9, 24, 51-55. But as the district court recognized, manifest disregard is not a basis for modification in the Second Circuit. Appx13-14. The Court may affirm on this ground alone.

Section 11 of the FAA provides the "exclusive grounds" for modifying an arbitration award. *See Hall St.*, 552 U.S. at 584. Under Section 11, a federal court may only "make an order modifying or correcting [an] award" in order to "effect the intent" of the parties. 9 U.S.C. § 11. Specifically, Section 11 allows for modification only:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

As the plain text of this provision shows, so long as the arbitrators rule only on the issues "submitted to them," the FAA does not authorize courts to alter the substance

of an arbitral award. 9 U.S.C. § 11(b). Rather, under Section 11, courts may only "modify arbitration awards to reflect the clear intent of the arbitrator when that intent was not expressed due to error or oversight." *Berkowitz v. Gould Paper Corp.*, 2022 WL 118232, at *4 (S.D.N.Y. Jan. 12, 2022). By its terms, Section 11 authorizes courts to modify arbitral awards that are "imperfect in matter of form *not* affecting the merits of the controversy," 9 U.S.C. § 11(c) (emphasis added), and therefore "does not license the district court to substitute its judgment for that of the arbitrators," *TD Ameritrade, Inc. v. Kelley*, 2016 WL 5660399, at *3 (S.D.N.Y. Sept. 30, 2016).

As before the district court, Acorda "does not assert any of the FAA's statutory bases for modification," Appx13-14, instead relying solely on the manifest disregard doctrine. Acorda Br. 51-55. But as the district court noted, following the Supreme Court's decision in *Hall Street*, the Second Circuit has recognized manifest disregard only "as a basis for vacatur, not modification." Appx14. There is no basis for this Court to modify the Award based on Acorda's disagreements with the Tribunal.

In *Hall Street*, the Supreme Court "cast doubt on the ongoing viability of the manifest disregard doctrine," Appx14, explaining that the doctrine is not a ground for "general review [of] an arbitrator's legal errors," nor an independent basis for vacating an award. 552 U.S. at 585. Without expressly abolishing the doctrine, the

Court suggested that it might "merely refer[] to the § 10 grounds [for vacatur] collectively, rather than adding to them," or perhaps could serve as "shorthand for § 10(a)(3) or § 10(a)(4), the paragraphs authorizing vacatur when the arbitrators were 'guilty of misconduct' or 'exceeded their powers.'" *Id.* In line with this description, the Second Circuit has held that "manifest disregard" is merely "a judicial gloss on the specific grounds for vacatur enumerated in *section 10* of the FAA," and thus "remains a valid ground for *vacating* arbitration awards." *Stolt-Nielsen SA*, 548 F.3d at 94-95 (emphasis added); *see also T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 340 (2d Cir. 2010) (recognizing that manifest disregard is "'a judicial gloss on the specific grounds for vacatur' of arbitration awards under 9 U.S.C. § 10").[5]

---

[5] Other circuits are in accord, either because they recognize manifest disregard solely as a basis for vacatur of an award, or because they reject the doctrine more broadly by limiting the grounds for vacatur and modification to those specifically enumerated in the FAA. *See Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 350, 355 (5th Cir. 2009) (holding that, "to the extent that manifest disregard of the law constitutes a nonstatutory ground for vacatur, it is no longer a basis for vacating awards under the FAA" after *Hall Street*); *AIG Baker Stering Heights, LLC v. Am. Multi-Cinema, Inc.*, 579 F.3d 1268, 1271 (11th Cir. 2009) (describing *Hall Street* as "confirm[ing]" that §§ 10 and 11 of the FAA "offer the exclusive grounds for expedited vacatur or modification of an award under the statute"); *Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 380 (6th Cir. 2008) ("[W]e have used the 'manifest disregard' standard only to vacate arbitration awards, not to modify them."); *Ramos-Santiago v. United Parcel Serv.*, 524 F.3d 120, 124 n.3 (1st Cir. 2008) (describing *Hall Street* as holding "that manifest disregard of the law is not a valid ground for vacating or modifying an arbitral award in cases brought under the Federal Arbitration Act"); *Crawford Grp., Inc. v. Holekamp*, 543 F.3d 971, 976

Acorda does not seek to vacate the Award under Section 11—unsurprisingly, because the Award favored Acorda in most respects. Acorda provides no basis for porting over to this action a doctrine limited to Section 11 vacatur requests. Indeed, the remedy Acorda seeks—the inclusion of damages the Tribunal expressly withheld—is facially incompatible with Section 11's exclusive grounds for modification. Acorda asks the Court to reject the "clear intent of the arbitrator[s]," *Berkowitz*, 2022 WL 118232, at *4, who intentionally and expressly excluded post-expiration royalties made without protest from the damages award, and to "substitute [the Court's] judgment for that of the arbitrators," *Diapulse Corp. of Am. v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir. 1980). As Courts in the Second Circuit have recognized, parties may not achieve this type of substantive alteration to an arbitral award under the guise of "modification." *Berkowitz*, 2022 WL 118232, at *2 n.5, *5. Indeed, this "gamesmanship" is "inappropriate" because "court[s] do[] not have the authority to award categories of damages through a modification of the arbitration award". *Id.* at *2 n.5, *5; *see also Josephthal & Co. v. Cruttenden Roth Inc.*, 177 F. Supp. 2d 232, 239 (S.D.N.Y. 2001) ("'[m]anifest disregard of the law,' … will simply never justify a request to modify an arbitration award, only as grounds to vacate").

(8th Cir. 2008) (citing *Hall Street* and explaining that "[a]n arbitral award may be vacated only for the reasons enumerated in the FAA").

As this reasoning reflects, Acorda is simply wrong (at 54) in stating that there is no "principled reason" why the manifest disregard doctrine would provide a basis to vacate, but not modify, an arbitral award. The manifest disregard doctrine is aimed at correcting an arbitrator's willful disregard of law (*see* pp. 28-29, *infra*), while the grounds for modification under Section 11 are directed toward correcting non-substantive errors in an award (*see* pp. 34-36, *supra*). It would make no sense to suggest that manifest disregard "refers to" or serves as "shorthand" for the Section 11 provisions. *Hall St.*, 552 U.S. at 585. As a result, the Second Circuit's reasoning for recognizing "manifest disregard" as a permissible interpretation or "judicial gloss" on Section 10, *see* p. 30, *supra*, is no basis to extend that doctrine to the grounds for modification found in Section 11. Acorda's broad appeal to "efficien[cy]," Acorda Br. 54, provides no basis for this Court to rewrite the FAA, which strictly limits the ability for courts to disturb arbitral awards. Indeed, enforcing those limits promotes efficiency of the system as a whole, because "the basic purpose of arbitration" "is to dispose of disputes quickly and avoid the expense and delay of extended court proceedings." *STMicroelectronics*, 648 F.3d at 78. By contrast, Acorda's position "would make an award the commencement, not the end, of litigation," *id.*, as parties like Acorda who agree an issue was properly submitted to arbitration and endorse much of the Tribunal's reasoning will be incentivized to

appeal those parts of the Award they dislike.[6]

None of the cases Acorda cites support its effort to rewrite Section 11. Acorda points (at 52) to a handful of Second Circuit decisions, but all predate *Hall Street* and the Second Circuit's subsequent decisions specifically tying manifest disregard to Section 10 of the FAA. Moreover, none of the decisions actually involve the modification of an arbitral award; indeed, most involve review of a request for vacatur, not modification.[7] Acorda also states (at 53) that "district courts applying Second Circuit law post-*Hall Street* continue to modify arbitral awards under the manifest disregard doctrine," but its cited cases show no such thing. In *Chen v. Kyoto Sushi, Inc.*, 2021 WL 1224377 (E.D.N.Y. Apr. 1, 2021), the appellant expressly "d[id] not assert manifest disregard of the law"; rather, the decision involved grounds for modification under Section 11. *Id.* at *3 n.6. In *Trustees of*

---

[6] While Alkermes respectfully disagrees with aspects of the Award, including the conclusion that the royalty obligation in the Agreements is unenforceable prospectively, that the Agreements are unenforceable in their entirety, and that the Supply Agreement is unenforceable because the two agreements operate as one, Alkermes has chosen—mindful of the standard of review—not to challenge them.

[7] *See N.Y. Tel. Co. v. Commc'ns Workers of Am. Loc. 1100, AFL-CIO Dist. One*, 256 F.3d 89, 91 (2d Cir. 2001) (reviewing a vacatur request); *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 198, 200, 201 & n.3 (2d Cir. 1998) (reviewing a vacatur request); *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997) (affirming the district court's finding of no manifest disregard); *DiRussa*, 121 F.3d at 819 (affirming the district court's finding of no manifest disregard under Section 10, despite using the term modification); *Fahnestock & Co. v. Waltman*, 935 F.2d 512, 515 (2d Cir. 1991) (reviewing a vacatur request).

*Northeast Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Management Cooperation Funds v. Patriot Field Services, Inc.*, 2019 WL 1333256 (E.D.N.Y. Mar. 25, 2019), the court merely granted a motion for default judgment, *id.* at *3. And in *Phoenix Bulk Carriers, Ltd. v. Am. Metals Trading, LLP*, 2013 WL 5863608 (S.D.N.Y. Oct. 31, 2013), Judge Buchwald (the judge who rejected Acorda's argument below) expressly described manifest disregard as a basis for vacatur, not modification. *Id.* at *4 (addressing a request for vacatur).[8]

The Court may therefore affirm the district court's judgment on the ground that Acorda invokes no cognizable basis for modifying the Award under the FAA.

## III. Acorda Comes Nowhere Near The Exceedingly High Bar For Showing The Tribunal Manifestly Disregarded The Law.

Even if the manifest disregard doctrine theoretically could be invoked to

[8] The remaining decisions cited by Acorda (at 53 n.26) are more of the same—none modify an arbitral award based on manifest disregard or otherwise discuss this issue. *See Ukshini v. Comity Realty Corp.*, 2018 WL 4625801, at *3 (S.D.N.Y. Sept. 26, 2018) (finding no manifest disregard of the law); *Van Buren v. Cargill, Inc.*, 2016 WL 231399, at *7 (W.D.N.Y. Jan. 19, 2016) (addressing a vacatur request); *Subway Int'l B.V. v. Seistola*, 2014 WL 9861978 at *2 (D. Conn. Apr. 7, 2014) (appellant did not argue manifest disregard of the law); *Whitfield v. Jones*, 2013 WL 6183096, at *2 (S.D.N.Y. Nov. 15, 2013) (finding no manifest disregard of the law); *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, 2011 WL 4344437, at *2 (S.D.N.Y. Sept. 9, 2011) (respondent did not challenge request to confirm arbitration award, and court was therefore not faced with a request to vacate or modify the award); *In re Arb. Between Gen. Sec. Nat'l Ins. Co.*, 785 F. Supp. 2d 411, 417 (S.D.N.Y. 2011) (reviewing a vacatur request); *Silver Ent. LLC v. Rabin*, 2011 WL 1097548, at *4-5 (S.D.N.Y. Mar. 21, 2011) (finding no manifest disregard of the law).

support a request to modify the award, Acorda has not carried its "heavy burden" to show that this is one of "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *Smarter Tools*, 57 F.4th at 383.

As explained, p. 22, *supra*, for manifest disregard to apply, the law must be "clear, and in fact explicitly applicable to the matter before the arbitrators." *Duferco*, 333 F.3d at 389-90. Debatable "misapplication of an ambiguous law does not constitute manifest disregard." *Id.* "[A]n arbitral panel's refusal or neglect to apply a governing legal principle 'clearly means more than error or misunderstanding with respect to the law'"; "[a] federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call." *Wallace*, 378 F.3d at 189-90. Rather, the manifest disregard standard is satisfied only "in the most egregious instances of misapplication of legal principles." *Id*. at 190. Moreover, the arbitrators "must have known of [the law's] existence, and its applicability to the problem before [them]," with courts "imput[ing] only knowledge of governing law identified by the parties to the arbitration." *Duferco*, 333 F.3d at 390.

In short, the doctrine is meant only to provide a limited judicial check for exceptionally rare cases where the arbitration panel "intentionally defied the law." *STMicroelectronics*, 648 F.3d at 78. It is not a vehicle for judicial review of

debatable legal questions, much less an avenue for litigants to press new theories and arguments that they failed to clearly and expressly raise in arbitration.

There is no serious argument for setting aside the Award under this standard— Judges Gajarsa, Linares, and Smith did not all "intentionally def[y]]" clearly controlling law. *Id.* Acorda argues that *Brulotte* requires restitution of all post-expiration royalties and that federal patent law preempts application of the NYVPD. But nothing in *Brulotte* (or subsequent cases like *Kimble*) even supports restitution of post-expiration royalties, let alone requires it clearly. As the district court recognized, Acorda has not identified "any case law" holding that *Brulotte* "requires a refund of post-expiration royalties," whereas several federal courts have held that "royalties paid after the expiration of a patent should not be refunded." Appx17-18. As for preemption, the district court correctly recognized that Acorda failed to raise the issue before the Tribunal, foreclosing invocation of the manifest disregard doctrine. Appx19. In any event, no controlling precedent clearly displaces a state policy that merely limits when refunds are available.

### A. The Tribunal's *Brulotte* Determination Was Not Made In Manifest Disregard Of The Law.

Nothing in *Brulotte, Kimble*, or any other case compels the remedy of a refund for royalties voluntarily paid after patent expiry. Those cases merely hold that an offending royalty obligation is *prospectively* unenforceable. *See Brulotte*, 379 U.S. at 34 (holding that "an attempt to project [a patent monopoly] into another term by

continuation of the licensing agreement is unenforceable"); *Kimble*, 576 U.S. at 453 (describing *Brulotte* as "making contract provisions unenforceable"). Acorda presents scattered theories for why *Brulotte* and its progeny should be understood to categorically require restitution, but its arguments are disconnected from the "severely limited" standard of review here. *Duferco*, 333 F.3d at 389.

#### 1. No controlling precedent addresses the refund question presented here.

In *Brulotte*, the Supreme Court held unenforceable a patent licensing agreement that extended beyond the expiration date of the underlying patent. 379 U.S. at 30-31. The Court explained that, "after expiration of the last of the patents incorporated in the" product at issue, "the grant of patent monopoly was spent," and "an attempt to project it into another term by continuation of the licensing agreement is unenforceable." *Id.* at 33-34. But that is the extent of the holding. Nowhere in its short opinion did the Court express any view on the remedy for licensing payments made post-expiry. *Id.* at 30-34. That is unsurprising, because the question was not presented: the licensees in *Brulotte* stopped making royalty payments well before the 1957 expiration date for the last patent at issue. *Id.* at 30; *see Thys Co. v. Brulotte*, 382 P.2d 271, 287 (Wash. 1963) (noting that "[n]o royalties were paid by either party after … 1952").

The Supreme Court's later decision in *Kimble* adds no support for Acorda's position, as the "sole question" presented in *Kimble* was whether the Court "should

overrule *Brulotte*." 576 U.S. at 449; *see id.* at 451 & n.3 (collecting authorities calling for the overruling of *Brulotte*, whose rule had been "severely" criticized). The Court reaffirmed *Brulotte* "[f]or reasons of *stare decisis*," concluding that despite significant criticisms of *Brulotte* and its economic underpinnings, there was no "superspecial justification to warrant reversing" the decision. 576 U.S. at 451, 458-60. Nothing in the decision purported to *expand* the *Brulotte* rule, and, as in *Brulotte*, the decision included no discussion of a licensee's ability to recovery royalty payments made *after* the patent expiration date. Again, the Court did not address such remedial questions because they were not relevant: the parties in *Kimble* sought a declaratory judgment prior to the patent expiration date regarding future enforceability of their licensing agreement. *See Kimble v. Marvel Enters., Inc.*, 692 F. Supp. 2d 1156, 1159 (D. Ariz. 2010). The decision therefore says nothing about the availability of, or limits on, restitution to obtain refunds of post-expiry royalties.

For the first time on appeal, Acorda also invokes *Scott Paper Co. v. Mercalus Mfg. Co.*, 326 U.S. 249 (1945). Acorda did not cite *Scott Paper* either in arbitration or to the district court, and for good reason: it has even less to say about the refund question. In *Scott Paper*, the Court addressed the doctrine of assignor estoppel, which "limits an inventor's ability to assign a patent to another for value and later contend in litigation that the patent is invalid." *Minerva Surgical, Inc. v. Hologic,*

*Inc.*, 594 U.S. 559, 563 (2021). In *Scott Paper*, the Supreme Court recognized an exception to that doctrine where it would "penalize the use of the invention of an expired patent." 326 U.S. at 254 (holding that estoppel does not bar an assignor from selling a device that has already entered the public domain). The decision did not involve a dispute over royalty payments, let alone the availability of a refund.

In short, none of the Supreme Court decisions on which Acorda relies addressed the remedial question decided by the Tribunal that Acorda seeks to overturn. The decisions therefore do not establish any governing legal principle on post-expiry refunds, let alone one that is "well-defined, explicit, and clearly applicable to the case." *Smarter Tools*, 57 F.4th at 383. Rather, they establish only that a royalty obligation becomes unenforceable after the patent expires. But the Tribunal fully endorsed and applied *that* rule, as it concluded that the royalty provisions in the parties' agreement were "unenforceable." Appx48; *see also* Appx49-50. It thus does Acorda no good to collect decisions recognizing this undisputed rule foreclosing post-expiration benefits and protecting post-expiration free use. *See* Acorda Br. 28 n.15, 29 n.16. Not one of those cases addressed a refund

claim,[9] and many did not involve a *Brulotte* violation at all.[10] Acorda is left without a single decision ordering a refund of post-expiration royalties, Appx17, which alone defeats Acorda's argument that the Tribunal flouted clearly applicable law by awarding Acorda only a partial refund of its royalty payments.

### 2. Acorda's arguments underscore that the Tribunal had a colorable basis for its *Brulotte* determination.

Unable to identify a single decision with an on-point *holding*, Acorda strains to manufacture a legal rule out of language fragments in *Brulotte* and *Kimble* while also invoking policy arguments in an effort to extend the reasoning of those decisions to refunds. These arguments are legally irrelevant under the FAA standard—there is no doctrine of "manifest disregard of policy" and arbitrators do not disregard the law by declining to endorse a proposed extension of existing precedent, if there is even a "barely colorable justification" on the other side.

---

[9] *See XY, LLC v. Trans Ova Genetics, LC*, 2020 WL 2128739, at *8 (D. Colo. May 5, 2020) (discussing the operation of a royalty agreement pre-patent expiration); *Goughnour v. Hayward Baker, Inc.*, 2018 WL 265588, at *6 (N.D.W. Va. Jan. 2, 2018) (licensee stopped making royalty payments upon expiration of the patent); *Cordance Corp. v. Amazon.com, Inc.*, 727 F. Supp. 2d 310, 337 (D. Del. 2010) (parties had not yet extended their agreement beyond the terms of the patent and, regardless, the agreement did not violate *Brulotte*).

[10] *See EcoServs., LLC v. Certified Aviation Servs., LLC*, 830 F. App'x 634, 652 (Fed. Cir. 2020) (generally describing *Kimble* before concluding that "[w]e do not see how *Kimble* applies to this case"); *High Point SARL v. T-Mobile, USA, Inc.*, 640 F. App'x 917, 928 (Fed. Cir. 2016) (licensing agreement did not run afoul of *Kimble*); *PC Films Corp. v. Turner Ent. Corp.*, 954 F. Supp. 711, 715 (S.D.N.Y. 1997) (rejecting the application of *Brulotte* to a copyright case).

*Wallace*, 378 F.3d at 189-90. Indeed, Acorda's repeated resort to "policy" (a term it uses [29] times in its brief) only highlights that there was no clear law here to be disregarded.

To start with, Acorda purports to divine a mandatory refund rule from snippets in *Brulotte* and *Kimble*. Acorda highlights (at 28) the statement from *Kimble* that "*Brulotte* had read the patent laws to prevent a patentee from *receiving* royalties for sales made after his patent's expiration." *Kimble*, 576 U.S. at 450 (emphasis added), along with a similar statement in *Brulotte* overturning the lower court judgment that "allow[ed] royalties to be *collected* which accrued after" patent expiry, 379 U.S. at 30 (emphasis added). Based on these statements, Acorda insists that *Brulotte* and *Kimble* require disgorgement on the theory that a patentee otherwise "'receives' post-expiration royalties by being allowed to retain them." Acorda Br. 26-27.[11] But that sweeping reading is unwarranted, and certainly is not *compelled*. Language in judicial decisions must be read "in the light of the facts that were before the Court in that case." *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 465 F.2d 1253, 1259 (6th Cir. 1972) (rejecting the argument that language in *Brulotte* should be read to compel mandatory refunds in the case of patent invalidation). And the facts show the

[11] Acorda states (at 22) that *Brulotte* and *Kimble* hold that "a patent owner is not allowed to demand, collect, *or keep* any post-expiration royalties," but it includes no cite for that statement and the word "keep" does not appear in either opinion.

Supreme Court in *Brulotte* and *Kimble* had no occasion to decide anything related to a refund remedy. *See* pp. 37-39, *supra*.

Acorda next argues that, even if *Brulotte* and *Kimble* do not themselves address restitution, "it *necessarily follows* that federal law forbids retention of illegal royalty payments and requires full restitution." Acorda Br. 31-32 (emphasis added). Acorda frames its argument in various ways, but at bottom it is repeating the same point: Because a licensing agreement is unenforceable after the expiration of a patent, the patentee *must* disgorge any payments made during the period when the agreement was unenforceable. This argument conflates the prospective enforceability of an agreement with retrospective remedies for payments made pursuant to that agreement. No unambiguous, controlling precedent dictates that a finding of unenforceability must automatically require that a party disgorge any payments it received during the period of enforceability.[12]

[12] In a footnote, Acorda suggests that "federal courts have the ability to grant restitution as an equitable remedy, including as a matter of federal common law." Acorda Br. 33 n.18. To the extent Acorda intends to raise a separate argument based on federal common law, it forfeited that argument by failing to raise it before the Tribunal or the district court (and then forfeited it again on appeal by raising this point solely in a footnote). *See* pp. 49-54, *infra*; *In re Couvaras*, 70 F.4th 1374, 1379 (Fed. Cir. 2023) ("arguments raised only in footnotes are waived") (alterations omitted). Regardless, Acorda's scattered references to the Economic Stabilization Act and the Emergency Petroleum Allocation Act, ERISA, and the common law of trusts do not establish clearly applicable governing law that the Tribunal was obligated to apply here.

To the contrary, the only courts to address the refund question in the context of an expired patent have both rejected Acorda's proposed extension of *Brulotte*. In *Tessera, Inc. v. Toshiba Corp.*, 2019 WL 5395158 (N.D. Cal. Oct. 22, 2019), the court concluded that *Brulotte* does not require a refund of royalties, but instead "only exclude[s] [the patentee's] affirmative claim for unpaid royalties due after expiration of a patent." *Id.* at *6. Likewise, in *Zila, Inc. v. Tinnell*, the court dismissed a claim for refund of royalties under *Brulotte* in part because "a party has no claim in restitution for performance that he has rendered … in return for a promise that is unenforceable on grounds of public policy." Order at 3, No. 2:00-cv-01345 (D. Nev. Apr. 22, 2004), ECF No. 172, *rev'd and remanded on other grounds*, 502 F.3d 1014 (9th Cir. 2007).[13]

These decisions alone provide at least a "colorable" basis for the Tribunal's decision. *Wallace,* 378 F.3d at 190. Acorda's contrary arguments once again ignore the standard of review and are flawed on their own terms. Acorda contends (at 34) that *Zila* was both "wrongly decided" and subsequently abrogated by *Kimble*. The latter suggestion is nonsensical, since the "sole question" in *Kimble* was whether the Supreme Court should overrule *Brulotte*, which the Court declined to do as a matter

[13] Acorda incorrectly states (at 34) that the "district court cited a single trial court decision holding that a patentee was not required to return post-expiration royalty payments." The district court discussed both *Zila* and *Tessera* (Appx18), as Acorda itself recognizes on the next page of its brief. *See* Acorda Br. 35 n.20.

of *stare decisis*. 576 U.S. at 449; *see* pp. 37-38, *supra*. As for Acorda's attack on *Zila*'s reasoning, Acorda contends (at 33-34) that court did not "fully consider" Restatement (Second) of Contracts § 198, but the *Zila* court explained exactly why it believed that section did not control. *See Zila*, *supra*, at 3.[14] Similarly, Acorda tries to distinguish *Tessera* on the theory that the plaintiff there made royalty payments based in part on its belief that its products practiced additional, unexpired patents. Acorda Br. 35 n.20. But the motive for post-expiry payments is of dubious relevance, and the *Tessera* court made clear that, regardless of why the licensee continued to make royalty payments, *Brulotte* affected "only" the licensee's claim for "unpaid royalties due after expiration of a patent." 2019 WL 5395158, at *6.

In any event, it does not matter whether this Court would find *Zila* and *Tessera* persuasive on *de novo* review. The point is that it could not possibly qualify as an

[14] Acorda invokes the Restatement (Third) of Restitution § 32 and the Restatement (Second) of Contracts § 198, *see* Acorda Br. 37-38 & n.22, but the general rule under the Restatement is that a court will *not* "allow[] a claim in restitution for performance … rendered under the unenforceable promise." *Gen. Dynamics Corp. v. United States*, 563 U.S. 478, 488 (2011) (applying Restatement (Second) of Contracts § 197). Rather, it "will simply leave both parties as it finds them, even though this may result in one of them retaining a benefit that he has received as a result of the transaction." *Id.* (explaining that this rule applies even where "unenforceability did not exist at the time the contract was formed," but rather arose at a later point). Regardless, while the Restatement may be helpful in filling in gaps in the law, Restatement principles do not control where, as here, there is applicable state law. *See Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1125 (6th Cir. 1990) (courts may look to the Restatements "when there is no controlling state law on point").

"egregious impropriety," *Wallace*, 378 F.3d at 189, for the Tribunal to align itself with the only judicial precedent squarely addressing the issue of refunds for post-expiry royalty payments.

Moreover, precedent addressing the analogous issue of royalty refunds for invalid patents further supports the Tribunal and undercuts Acorda's reasoning equating prospective enforceability with mandatory restitution. "Circuit courts … are agreed … that while . . . an adjudication of the patent's invalidity will permit recission of the agreement, it will not, without more, allow the licensee to recover royalties paid prior to bringing suit." *Transitron Elec. Corp. v. Hughes Aircraft Co.*, 649 F.2d 871, 874 (1st Cir. 1981). Thus, a licensee is not entitled "to a refund of all royalties paid for the use of [an] invalid patent." *St. Regis Paper Co.*, 552 F.2d at 314; *see also Troxel*, 465 F.2d at 1259 (same); *Levenger Co. v. Feldman*, 516 F. Supp. 2d 1272, 1289-90 (S.D. Fla. 2007) (collecting cases holding "that patent invalidity does not entitle a licensee to a refund of royalties paid prior to bringing suit"). The same is true for patents that are unenforceable due to inequitable conduct. *See id.* at 1290 ("a finding of unenforceability does not entitle [licensee] to a refund of royalty payment").[15]

Acorda tries to distinguish these cases on the theory that, unlike an expired

[15] Alkermes presented this argument in briefing to the Tribunal and cited *Levenger* as illustrative. Appx585.

patent, a patentee supposedly has a "right" to royalties until a patent "is declared invalid," at which point it "enters the public domain." Acorda Br. 35-36. That makes little sense. A judgment of invalidity necessarily applies retroactively, meaning a patent found invalid is treated as having always been invalid. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1346 (Fed. Cir. 2013) (invalid claims are "void *ab initio*"); *cf. Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015) (once a patent "is shown to be invalid, there is no patent to be infringed"). Because an invalid patent is "no patent" at all, *Commil*, 575 U.S. at 644, the patent owner was never entitled to royalties. Even so, courts have consistently held that licensees have no right to restitution. *See* p. 45, *supra*.

Acorda suggests (at 36) there may be policy reasons to limit this rule to the invalidity context, but that argument again misses the point. Acorda insists there is a clear rule barring patent owners from retaining benefits under a patent after its invention should have entered the public domain. *See, e.g.*, Acorda Br. 8 ("the patent laws do not … permit a licensee to be penalized for its use of an invention that has entered public domain"); *id.* at 31 ("Without full restitution, the licensee is 'penalized' for access to an invention in the public domain[.]"). The invalidity cases show that no such categorical rule exists, and that the Tribunal certainly did not disregard clear law by distinguishing the finding of enforceability from the question of remedy.

Finally, Acorda falls back on general public policy arguments to support its position. Acorda Br. 32-36. But such general appeals to policy provide no basis for reversal under the FAA, and they are unfounded in any event. Acorda contends that the Tribunal's approach "encourages gamesmanship" and incentivizes patent owners to coerce their licensees into making post-expiration payments. *Id.* at 32. That concern is imaginary: if a licensee believes it no longer owes royalties under the terms of the parties' agreement, it can simply do what Acorda eventually did here and pay under protest. And while Acorda suggests (at 36 n.21) that this case "illustrates" why its preferred rule would "preserve marketplace integrity," Acorda Br. 36 n.21, the Tribunal found that Alkermes's conduct had no effect on the market—findings that are "not open to judicial challenge." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 213 (2d Cir. 2002) ("accept[ing] the facts as the arbitrator found them"). As the Tribunal explained, generics began entering the market once the '938 Patent expired. Appx279. According to the Tribunal, there was "no evidence" of "a restriction on consumer choice," nor inflated prices Appx279-280.[16] Acorda cannot rely on factual predicates that the Tribunal rejected

[16] Acorda suggests (at 36 n.21) that it could not compete effectively against generic competitors as a result of its payment of post-expiration royalties, but its sole support is its own briefing before the Tribunal. *See* Appx365 (Acorda's Proposed Findings of Fact), Appx405 (Acorda's Proposed Findings of Fact), Appx649 (Acorda's Post-Hearing Brief). The Tribunal made no factual findings that Acorda's payment of

to turn a legal principle that no court has adopted into clearly established law.

### B. The Panel Did Not Manifestly Disregard The Law By Applying New York's Voluntary Payment Doctrine.

Acorda fares no better in attacking the Tribunal for relying on New York law (which the parties' agreements expressly adopted, Appx50) to limit its recovery based on the NYVPD to those royalty payments that it timely protested. A straightforward application of the NYVPD precludes Acorda from recovering the royalties the Tribunal declined to award. This outcome is entirely due to Acorda's own decisions and lack of diligence; Acorda's position, at bottom, seeks to evade consequences from its own failure to act.

The NYVPD "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillon*, 790 N.E.2d at 1156; *see also Overbay, LLC v. Berkman, Henoch, Peterson, Peddy & Fenchel, P.C.*, 128 N.Y.S.3d 56, 58 (N.Y. App. Div. 2020) (describing the "presumption that payments are voluntary" and explaining when a "protest of payment" is sufficient to overcome the NYVPD). "Where, as here, a sophisticated party" remits "voluntary payments pursuant to an understanding of its legal obligations … courts have consistently held that such party's lack of diligence

---

royalties had any effect on its ability to compete, and Alkermes presented evidence to the contrary. Appx374.

in determining what its contractual rights were precludes recoupment of the voluntarily remitted funds." *Turner Network Sales, Inc. v. DISH Network, L.L.C.*, 413 F. Supp. 3d 329, 340-41 (S.D.N.Y. 2019) (quotation marks omitted). Here, the Tribunal determined that the NYVPD barred Acorda's request for restitution. *See* pp. 14-15, *supra*.

The Tribunal plainly had a colorable basis for that decision as a matter of New York law, and Acorda notably does not argue otherwise. The Tribunal found that Acorda knew about the expiration of the '938 patent, yet waited for two years before raising any *Brulotte* question—and even then (and thereafter) chose never to protest payments made under the Supply Agreement. Appx51-52.

Rather than challenge this determination, Acorda has attempted to avoid the NYVPD entirely. In district court, Acorda argued for the first time that application of the NYVPD was preempted by federal law. But this Court's review is limited to arguments that were presented to the Tribunal, and the Tribunal did not manifestly disregard clearly controlling law by applying the NYVPD.

#### 1. Acorda never presented to the Tribunal its argument that federal law displaces state-law limits on restitution.

Acorda's arguments have changed at every turn of this case. Before the Tribunal, Acorda relied exclusively on state law, arguing that New York law on unjust enrichment allowed it to recover post-expiration royalties made without protest. Appx250-253, Appx632-639. And Acorda maintained that, as a matter of

state law, neither the License Agreement's no-refund provision nor the NYVPD precluded recovery. Appx253-258, Appx637-639. Acorda changed tacks before the district court, arguing for the first time that the NYVPD is preempted by federal law. Acorda's petition relied almost exclusively on *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989)—a decision it never even cited to the Tribunal. Acorda now raises a variation of this theory on appeal, arguing that the NYVPD is preempted under a theory of conflict preemption. *See* Acorda Br. 40. And for the first time, Acorda identifies federal common law as a source of this Court's ability to grant restitution. *See id.* 33 n.18.

As the district court recognized, "Acorda's new argument that the NYVPD is pre-empted by federal patent law … was not specifically raised before the Tribunal." Appx19. Acorda argues (at 44) that this determination was an abuse of discretion because it rests on "a clearly erroneous factual finding"—*i.e.*, "that Acorda did not raise preemption before the Tribunal." Acorda Br. 44. But the only statement Acorda can find to suggest that it raised preemption before the Tribunal is its brief description of *Brulotte* as dictating that an agreement requiring payment of post-expiration royalties is "unenforceable under the Supremacy Clause of the Constitution." *Id.* (quoting Appx635).[17] In Acorda's view, its single "citation to the

[17] In full, Acorda stated: "In *Brulotte v. Thys Co.*, 379 U.S. 29 (1964), the Supreme Court held that a contract calling for the payment of patent royalties after the

Supremacy Clause … constitutes an argument that federal law announced in *Brulotte* preempts contrary state laws, including the NYVPD." Acorda Br. 44-45.

This argument fails for several reasons. Most fundamentally, Acorda again skips past the FAA standard of review, which is incompatible with Acorda's approach to preservation. As noted, pp. 21-22, *supra*, manifest disregard can be established only when an arbitrator ignored clearly applicable authority "after it was brought to the arbitrator's attention in a way that assures that the arbitrator knew its controlling nature." *Goldman*, 306 F.3d at 1216. An unexplained "citation to the Supremacy Clause," Acorda Br. 44, is insufficient to have clearly placed before the Tribunal the detailed conflict preemption that Acorda now advances, *see id.* at 37-44. Acorda's statement did not even expressly address conflict preemption, let alone the relief due for payments made under an unenforceable contract. In fact, Acorda made this statement while arguing that it was entitled to a remedy under *state law*; the cited statement appears immediately after the heading: "*Brulotte* and its progeny do not bar Acorda's claim for contractual or quasi-contractual damages." Appx635 (capitalization altered). This sort of vague, passing reference would not preserve a claim even in the context of ordinary district court litigation.[18] It unquestionably

expiration of the licensed patent constitutes patent misuse and is *per se* unenforceable under the Supremacy Clause of the Constitution." Appx635.

[18] *See, e.g.*, *Baley v. United States*, 942 F.3d 1312, 1330 n.20 (Fed. Cir. 2019) ("single sentence" "insufficient to preserve" an argument); *Forest Lab'ys, LLC v.*

fails under the far more demanding standard for manifest disregard. *See, e.g.*, *DiRussa*, 121 F.3d at 823 (arbitrators are only charged with knowledge of legal principles that were clearly presented by the parties).

Nor can Acorda object that it lacked notice that the Tribunal would invoke the NYVPD. Acorda's characterization of the proceedings below is deeply misleading. *See* pp. 11-15, *supra*. The parties extensively briefed the application of the NYVPD at the summary judgment stage. Appx250-258, Appx632-639. In its summary judgment order, the Tribunal recognized that "the NYVPD might preclude any refund remedy for payments by Acorda that were made voluntarily," but decided that it need not reach the issue because the Tribunal's application of the no-refund clause resulted in the same outcome. Appx274-275. So, as the district court explained, "[c]ontrary to Acorda's suggestion, the Tribunal did not 'squarely reject' Alkermes' attempt to rely on the NYVPD in its summary judgment decision." Appx17 n.5. And regardless of whether the Tribunal's final decision rested on the NYVPD or the Agreement's no-refund clause, the parties fully briefed the issue and the Tribunal determined that Acorda was not entitled to restitution for post-expiration, pre-protest payments.

---

*Sigmapharm Lab'ys, LLC*, 918 F.3d 928, 933 n.1 (Fed. Cir. 2019) (passing citation in post-trial brief to statutory basis for definiteness challenge did not preserve indefiniteness argument on appeal).

Acorda's attempt (at 46-47) to invoke *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509 (Fed. Cir. 2012), is misguided. That decision did not address review of an arbitral decision under the FAA, and the situation is not analogous. In *ePlus* the Court merely recognized that a party need not repeatedly raise an argument to the district court once that court has rejected it. *Id.* at 517-18 (party not required to "press [an] issue over and over again to preserve it for appeal"). But *ePlus* presumes that the party actually raised the argument at some point. *See id.* at 517. The problem here is not that Acorda could not revisit preemption after summary judgment—the problem is that it never clearly raised a preemption argument to the Tribunal at all.

As a fallback position, Acorda contends (at 47-51) that the Court "has discretion" to consider a preemption argument it did not present to the Tribunal. But that position is obviously wrong and only highlights Acorda's persistent misunderstanding of FAA review. As explained, pp. 21-22, *supra*, manifest disregard must rest on "persuasive evidence that the arbitrators *actually knew of*—and intentionally disregarded"—a particular argument. *DiRussa*, 121 F.3d at 822-23 (emphasis added); *see also British Ins. Co. of Cayman v. Walter St. Ins. Co.*, 93 F. Supp. 2d 506, 521 n.16 (S.D.N.Y. 2000) ("It would be disingenuous for [party] to argue now that the panel was 'aware of' and 'purposefully ignored' a defense that was not squarely presented."). The factors this Court considers when deciding whether to permit appellate review of "an issue not argued *to the district court*,"

Acorda Br. 48 (emphasis added), are irrelevant under this standard. It does not matter for purposes of FAA review whether a forfeited issue presents an issue "of great public concern," raises a "pure question of law," or implicates a matter of "substantial justice." *Id.* Because a finding of manifest disregard must turn on "the knowledge *actually possessed* by the arbitrator," *Westerbeke Corp.*, 304 F.3d at 209 (emphasis added), it is logically impossible for the Court to excuse Acorda's forfeiture while still faithfully applying the FAA standard of review.

#### 2. The Tribunal had a colorable justification for applying the NYVPD to limit Acorda's recovery.

Even if Acorda's preemption argument were somehow deemed preserved, it provides no basis for disturbing the Tribunal's decision. The Tribunal had a more than colorable justification for applying the NYVPD to limit Acorda's recovery to the royalty payments it timely protested.

Because Acorda cannot challenge the Tribunal's application of the NYVPD as a matter of state law, *see* pp. 48-49, *supra*, Acorda takes the position that "*no* state-law doctrine—whether arising from common law, statute, contract law, or the law of waiver or estoppel—may be applied to reward a patentee for the use of the patentee's invention by any member of the public, including a former licensee, once the patent has expired." Acorda Br. 43 (emphasis added). No controlling precedent clearly establishes any such rule of federal preemption. Indeed, as framed by Acorda, this sweeping preemption theory generates indefensible results. Under

Acorda's rule, states seemingly could not impose *any* limitations on refund actions following *Brulotte* violations, such as limitations period or laches. But no one could seriously think that federal patent policy compels a refund right that extends indefinitely, entitling licensees to recover refunds of voluntarily paid royalties decades after the last payment.

No principle of conflict preemption suggests that state-law limits on backward looking remedies for a *Brulotte* violation somehow "extend[] Alkermes's patent monopoly beyond the term set by Congress." Acorda Br. 40. Again, *Brulotte* itself does not require (or even support) providing refunds for post-expiration royalty payments, and a limit on retrospective recovery is not remotely equivalent to validation or enforcement. *See* pp. 36-47, *supra*. The Tribunal held that the Agreements were unenforceable, thus prohibiting Alkermes from recovering future royalties for a subject that no longer enjoys patent protection. Appx49. Acorda's statements (at 43-44) that the Tribunal "permit[ted] Alkermes to charge Acorda" and "prevented Acorda … 'from enjoying rights which is the policy of the patent laws to free from all restrictions'" are misleading. A state policy that merely limits when refunds are available does not conflict with federal patent law. At a minimum, the Tribunal had at least a "barely colorable justification" to apply the NYVPD under the circumstances, which precludes judicial interference with the Award. *Smarter Tools*, 57 F.4th at 383.

* * *

At every turn of its argument, Acorda ignores the governing legal standard. The law precludes Acorda from obtaining its desired relief—modification of the Award—under a theory of manifest disregard of the law. Moreover, even if that theory were applicable, Acorda could prevail only by showing that the Tribunal lacked a "barely colorable justification" for its determination. Acorda comes nowhere close. No matter how many times Acorda cites *Brulotte* and *Kimble*, it cannot change that those decisions never addressed the remedies question at issue here. Nor can Acorda change that the Tribunal expressly relied on authorities holding that *Brulotte* does *not* require a refund of royalties already paid, while Acorda has never cited any case adopting its position. Instead, Acorda resorts to policy appeals and efforts to distinguish the case law that did address the remedies issue—case law that went entirely in Alkermes's favor. Ultimately, Acorda is left to argue that this Court should upend the Tribunal's decision based on a novel (and incorrect) preemption theory that it never presented to the Tribunal and that no court has ever adopted. And all of this is in the face of the robust federal policy in favor of enforcing arbitration awards. In other words, Acorda's arguments fail several times over. This Court should affirm the district court's order and reject Acorda's last-gasp attempts to overturn the Tribunal's reasoned decision.

## CONCLUSION

The judgment of the district court should be affirmed.

May 29, 2024

Respectfully submitted,


*/s/ Brian T. Burgess*
Brian T. Burgess
GOODWIN PROCTER LLP
1900 N Street NW
Washington, DC 20036
(202) 346-4000

Christopher T. Holding
Jordan Bock
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, MA 02210
(617) 570-1000

*Counsel for Appellee Alkermes PLC*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2), it contains 13,931 words.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-scale requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word 2016 in 14-point Times New Roman, a proportionally spaced typeface.

May 29, 2024

/s/ *Brian T. Burgess*
Brian T. Burgess

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2024, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Federal Circuit using the Court's CM/ECF system. Counsel for all parties to this case are registered CM/ECF users and will be served by the CM/ECF System.

/s/ *Brian T. Burgess*
Brian T. Burgess