# United States Court of Appeals for the Federal Circuit

---

**ACORDA THERAPEUTICS, INC.,**
*Petitioner-Appellant*

**v.**

**ALKERMES PLC,**
*Respondent-Appellee*

---

2023-2374

---

Appeal from the United States District Court for the Southern District of New York in No. 1:23-cv-00223-NRB, Judge Naomi Reice Buchwald.

---

Decided: July 25, 2025

---

GARRARD R. BEENEY, Sullivan & Cromwell LLP, New York, NY, argued for petitioner-appellant. Also represented by STEPHEN J. ELLIOTT, MORGAN ROSE KNUDTSEN; BRITTANY BRUNS, Washington, DC.

BRIAN TIMOTHY BURGESS, Goodwin Procter LLP, Washington, DC, argued for respondent-appellee. Also represented by JORDAN BOCK, CHRISTOPHER T. HOLDING, Boston, MA.

---

Before TARANTO, HUGHES, and STARK, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Acorda is the developer of Ampyra®, a drug used to treat patients with multiple sclerosis. Until 2018, Alkermes owned a patent covering Amprya's active ingredient. Alkermes licensed the patent to Acorda in return for royalty payments and contracted to supply Acorda with the active ingredient in return for royalty payments. In July 2018, the licensed patent expired, but Acorda continued to make royalty payments—without protest until July 2020 and thereafter under protest.

Acorda initiated an international arbitration, pursuant to the parties' agreement, in July 2020. It sought (a) a judgment that, when the patent expired, the royalty provisions became unenforceable under federal law based on *Brulotte v. Thys Co.*, 379 U.S. 29, 30–34 (1964); *see also Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446, 449, 458–60 (2015) (declining to overrule *Brulotte*), and (b) recoupment of royalties paid since July 2018. The arbitration tribunal (Tribunal) agreed that the provisions were unenforceable but concluded that Acorda was entitled to recoup only payments made under formal protest. Amended Findings of Fact, Conclusions of Law, and Final Reasoned Award, *Acorda Therapeutics, Inc. v. Alkermes PLC*, Arbitration No. 01-20-0010-8421 (Am. Arb. Assoc. Int'l Ctr. Disp. Resol. Apr. 11, 2022) (*Award*); J.A. 33–55. Acorda filed the legal action now before us by petitioning the United States District Court for the Southern District of New York to confirm all the Tribunal's rulings except for the denial of recoupment of the unprotested 2018–2020 payments, which Acorda sought to modify on the ground that the Tribunal acted in "manifest disregard" of federal patent law and a non-patent-law principle of law. Alkermes disputed the modification request only. The district court rejected Acorda's manifest-disregard arguments and confirmed the award in full. *Acorda Therapeutics, Inc. v. Alkermes PLC*, No. 23-cv-223, 2023 WL 5003767, at *1 (S.D.N.Y. Aug. 4, 2023) (*Decision*); J.A. 1–20.

Acorda appealed, asserting that this circuit has appellate jurisdiction over the appeal and should reverse the district court's denial of the 2018–2020 recoupment it sought. We conclude that Acorda's petition to modify the arbitral award on the ground that the arbitration panel manifestly disregarded the law is not within our jurisdiction under 28 U.S.C. § 1295(a)(1). We therefore transfer the case to the United States Court of Appeals for the Second Circuit.

I

A

Acorda is the developer of Ampyra®, a drug used to improve the walking ability of patients with multiple sclerosis. *Decision*, at *1; J.A. 357. Alkermes owned now-expired U.S. Patent No. 5,540,938, which claimed a sustained-release formulation of the active ingredient in Ampyra, dalfampridine. *Decision*, at *1. In 1998, Acorda and Alkermes entered into a joint-venture agreement, under which Alkermes licensed the '938 patent to Acorda, and supplied the active ingredient, for an ongoing royalty of 18% of the net sales price of drugs sold as part of the joint venture, among other conditions. *Award*, at 6–7; J.A. 320. In 2003, Acorda and Alkermes dissolved the joint venture due to regulatory concerns and entered into a new agreement with two contracts. *Award*, at 7; J.A. 329–30. Under those two contracts, Acorda, as seller of Ampyra, would pay a 18% royalty to Alkermes, structured as a 10% royalty under a License Agreement plus an 8% royalty under a Supply Agreement. J.A. 154; J.A. 214–15; J.A. 329–30. In 2010, upon FDA approval of the relevant new drug application, Acorda began to market Ampyra. J.A. 357.

On July 30, 2018, the '938 patent expired and generic versions of Ampyra soon entered the market. J.A. 365, 388. In December 2019, Acorda contacted Alkermes and requested an adjustment to the royalties in light of the expiration, but Alkermes refused. J.A. 265; J.A. 391, 394. Acorda continued to make payments, without (as the

parties accept before us) stating a formal protest. Acorda Opening Br. at 11–12; Alkermes Response Br. at 9; J.A. 265; J.A. 628 n.5. In April 2020, Acorda again asserted to Alkermes that the royalty provision of the License Agreement was unenforceable due to the expiration of the '938 patent, citing *Brulotte*, 379 U.S. at 32, but Acorda continued to make payments without a protest. J.A. 390, 394. In July 2020, two years after the '938 patent expired, Acorda began to include a protest with each payment made under the License Agreement, while not doing so for payments made under the Supply Agreement. J.A. 265; J.A. 446.

B

On July 28, 2020, Acorda filed with the American Arbitration Association's International Centre for Dispute Resolution a Demand for Arbitration with Alkermes, pursuant to arbitration terms of the License and Supply Agreements. *Award*, at 1–2; J.A. 83. Among other claims, Acorda sought a declaration that the licensing royalty provision was unenforceable after the expiration of the '938 patent in July 2018, and a return of royalties Acorda had paid after July 2018, invoking unjust enrichment as a basis for such recoupment. *Award*, at 2–3. As the parties agree, New York law governed the arbitration. *Id.* at 18 n.10.

On November 7, 2022, after discovery, summary-judgment, and other proceedings, the Tribunal issued an arbitral award. *See generally Award*. It agreed with Acorda that, under *Brulotte*, the License Agreement's royalty provision was unenforceable upon the expiration of the '938 patent. *Id.* at 8–16; *see Brulotte*, 379 U.S. at 32 ("[A] patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful per se."). It then determined that "the License and Supply Agreements are, for all intents and purposes, one agreement" and thus that the Supply Agreement's royalty provision was also unenforceable. *Award*, at 16–17.

The Tribunal then turned to the question of monetary remedies—specifically, whether Acorda was entitled to recover any payments made after patent expiration under a theory of "unjust enrichment/restitution." *Id.* at 17. Regarding the License Agreement, the Tribunal applied the New York Voluntary Pay Doctrine (NYVPD)—under which "payments that are 'made with full knowledge of the facts, even if made under mistake of law,' are not recoverable"—to bar recovery of the payments that Acorda had made without protest. *Id.* at 18 (quoting *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 740 N.Y.S.2d 396, 397 (App. Div. 2002), *aff'd*, 100 N.Y.2d 525 (2003)). Earlier, in a summary-judgment ruling, the Tribunal had relied for the same conclusion on a provision of the patent license stating that "[a]ll payments received by [Alkermes] from Acorda under Article 5 shall be non-refundable, subject to the provisions of Article 5.9.5 [concerning year-end adjustments]." Opinion and Order (Order #23) Regarding Motions for Summary Judgment at 11–12, *Acorda Therapeutics, Inc. v. Alkermes PLC*, Arbitration No. 01-20-0010-8421 (Am. Arb. Assoc. Int'l Ctr. Disp. Resol. Apr. 11, 2022); J.A. 273–74 (discussing Article 5 at J.A. 156). The Tribunal did, however, award Acorda $16,554,267 for the payments Acorda made under protest beginning in July 2020. *Award*, at 18. Regarding the Supply Agreement, the Tribunal concluded that Acorda could not recover any royalty payments because Acorda had never protested those royalties in its letters to Alkermes, and "New York's law requires the protest to be in writing and explicit as to the rights being asserted." *Id.* at 18–20.

C

In January 2023, Acorda initiated the lawsuit now before us. Petition to Confirm Arbitral Award in Part and Modify in Part, *Acorda Therapeutics, Inc. v. Alkermes PLC*, No. 23-cv-223 (S.D.N.Y. Jan. 10, 2023), Dkt. No. 1 (*Petition*); J.A. 77–95. Because Alkermes is a foreign corporation under the Convention on the Recognition and

Enforcement of Foreign Arbitral Awards (New York Convention), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, Acorda could and did invoke the New York Convention's enabling statute, chapter 2 of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 201–208. *Petition*, at 2–3. It invoked the district court's diversity jurisdiction, 28 U.S.C. § 1332(a)(2), and the court's jurisdiction under 9 U.S.C. § 203. *Petition*, at 3. To the extent that Acorda sought confirmation of the award, it invoked 9 U.S.C. § 207;[1] and to the extent it sought modification, it invoked 9 U.S.C. § 11 (also citing § 10, regarding vacatur). *Petition*, at 1–3. Under 9 U.S.C. § 208, the chapter 1 provisions at issue apply to this chapter 2 action; no party argues that any such provision is inconsistent with chapter 2 or the New York Convention.

The modification of the award that Acorda sought was to order recoupment from Alkermes of the payments Acorda made without formal protest upon the July 2018 expiration date of the patent (an amount exceeding $65 million). *Petition*, at 1, 16, 19. Acorda took as its starting point the Tribunal's recognition that *Brulotte* rendered unenforceable the patent-royalty payment obligation; based on that premise, Acorda contended that the Tribunal "manifestly disregarded the law" in curtailing the remedy, *i.e.*, "by denying Acorda damages" that included backward-looking recoupment of unprotested post-expiration payments. *Id.* at 16; *see also id.* at 1–2 (asserting that the Tribunal "manifestly disregarded applicable law by supplanting federal law . . . with a state law doctrine" and "used a New York judge made law (the [NYVPD]) to circumvent the full application of the federal law"). The

---

[1] Acorda could also have cited the materially similar 9 U.S.C. § 9, the confirmation provision of chapter 1. The district court, when discussing confirmation, cited 9 U.S.C. § 9. *Decision*, at *7.

Petition expressly refers, for explanation of its manifest-disregard contention, to the "greater detail [provided] in the accompanying Memorandum of Law." *Id.* at 16 (referring to Memorandum of Law in Support of Petition to Confirm Arbitral Award in Part and Modify in Part, *Acorda Therapeutics, Inc. v. Alkermes PLC*, No. 23-cv-223 (S.D.N.Y. Jan. 10, 2023), Dkt. No. 3 (*Memorandum*); J.A. 96–119). There, Acorda recited two separate arguments for the remedy it sought, one based on patent law and the other not:

> The Tribunal's application of state law doctrine to limit Acorda's damages was in manifest disregard of federal law set forth in Brulotte for at least the following reasons:
>
> *First*, the Tribunal manifestly disregarded the law by invoking state law in clear derogation of clearly applicable federal patent law. The Supreme Court has repeatedly and emphatically held that state laws may not interfere with the federal patent laws by offering "patent-like protection to the subject matter of the expired patent." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 152, 165 (1989). By allowing Alkermes to retain illegal royalty payments that it demanded after expiration of its patent, the Award rewards Alkermes's gross misuse of monopoly power, unlawfully extends the term of Alkermes's patent beyond the statutory period, and upends the entire framework governing the Patent Act as set forth in *Brulotte* and its progeny.
>
> *Second*, by allowing Alkermes to keep the tens of millions of dollars in royalty payments it demanded and collected after the expiration of its patent, the Award also gives effect to licensing agreements that the Tribunal (and Supreme Court) determined were illegal. The Tribunal's ruling therefore

> violates the fundamental rule that "no court will lend its assistance in any way towards carrying out the terms of an illegal contract." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982) (quoting *McMullen v. Hoffman*, 174 U.S. 639, 654 (1899)); *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, No. 20-CV-5120 (LJL), 2022 WL 3536128, at *6 (S.D.N.Y. Aug. 17, 2022) ("The courts will not, of course, lend their hand in enforcing an illegal contract.").

*Memorandum*, at 3–4 (ECF pp. 8–9); *see also id.* at 12–19 (ECF pp. 17–24) (relying on patent law); *id.* at 19–23 (ECF pp. 24–28) (relying on non-patent-law cases, *Kaiser Steel* and *McMullen*).

On August 4, 2023, the district court declined Acorda's request to modify the award—rejecting what it recognized were Acorda's "two arguments in support of its claim that the manifest disregard standard has been met," one based on patent law (specifically, on *Brulotte)*, the other on non-patent law principles of illegal contracts (specifically, on *Kaiser Steel*). *Decision*, at *6. The district court first observed that, "since the Supreme Court cast doubt on the ongoing viability of the manifest disregard doctrine" in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584–91 (2008), "the doctrine has only been recognized by the Second Circuit as a basis for vacatur, not modification." *Decision*, at *5. The court then addressed why, in any event, the Tribunal did not act in manifest disregard of the law. *Id.* at *5–7.

Regarding the patent-law ground: The district court determined that *Brulotte* rendered the License and Supply Agreements unenforceable but simply did not answer the separate question of whether already-paid royalties must be refunded. *Id.* at *6–7. Without a "clear legal principle" to be found in *Brulotte* on this issue, the district court held, the Tribunal appropriately relied on (1) the agreements'

no-refund clause in its summary-judgment order and (2) the NYVPD in its arbitration award to determine that an additional refund was not justified. *Id.* at *6. The district court rejected Acorda's argument that the NYVPD is preempted by federal patent law, both as forfeited because it was not made to the Tribunal and on the merits because "*Brulotte* and its progeny have not clearly articulated a rule on the refund of royalties" and thus did not preempt state law on this issue. *Id.* at *7. Regarding Acorda's second, non-patent-law (*Kaiser Steel*) argument for manifest disregard, the district court concluded: "Nor does Acorda's argument that the Tribunal manifestly disregarded the law by giving effect to an illegal contract hold weight." *Id.* It explained: "[T]he Tribunal held that *Brulotte* did, in fact, render the Agreements unenforceable[, . . . and t]he Tribunal's decision to limit restitution to payments made under protest is not equivalent to upholding the Agreements." *Id.*

The district court entered judgment confirming the award in full on August 7, 2023. J.A. 21. Acorda filed a timely appeal.

## II

In the briefing before oral argument, the parties disagreed regarding whether this court or the Second Circuit has appellate jurisdiction over this case (Acorda supporting our jurisdiction, Alkermes supporting Second Circuit jurisdiction) and also about whether the district court erred in rejecting Acorda's manifest-disregard contentions (Acorda urging error, Alkermes denying error). After oral argument, we requested and received supplemental briefs on the jurisdictional issue. We are obligated to address our own jurisdiction and are not restricted to the arguments made by the parties. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1357 (Fed. Cir. 2020). We now conclude that we lack jurisdiction over this appeal, and so we transfer the appeal to the Second Circuit.

This court has jurisdiction over appeals from a final decision of a district court "in any civil action arising under, or in any civil action in which a party has asserted a compulsory counterclaim arising under, any Act of Congress relating to patents." 28 U.S.C. § 1295(a)(1). The present case does not involve the compulsory-counterclaim language. The applicable language directs inquiry to the operative complaint in the district court (here, the case-initiating petition, which was never amended), since it makes our appellate jurisdiction turn on whether the case arose under federal patent law in the district court, where, under "the 'well-pleaded complaint rule,'" jurisdiction depends on "the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

An action can "aris[e] under" federal patent law in two ways: if "a well-pleaded complaint establishes . . . that federal patent law creates the cause of action," or if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 808–09 (1988); *see Xitronix Corp. v. KLA-Tencor Corp.*, 882 F.3d 1075, 1076 (Fed. Cir. 2018). Those "arising under" standards borrow the "arising under" standards applicable in district court to 28 U.S.C. §§ 1331 and 1338. *Vermont v. MPHJ Technology Investments, LLC*, 803 F.3d 635, 645–46 (Fed. Cir. 2015); *see also Chandler v. Phoenix Services LLC*, 1 F.4th 1013, 1015–16 (Fed. Cir. 2021); *Xitronix*, 882 F.3d at 1076–77; *Jang v. Boston Scientific Corp.*, 767 F.3d 1334, 1336 (Fed. Cir. 2014). The Supreme Court has made clear that situations falling within the "'special and small'" second category—that is, where the plaintiff's right to relief *necessarily* depends on resolution of a substantial question of patent law, an exception to the general requirement that the relevant federal law create the cause of action—are "extremely rare." *Gunn v.*

*Minton*, 568 U.S. 251, 257–58 (2013) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

It is plain and undisputed that there is no patent-law cause of action applicable to this case, as it was brought solely under provisions of the Federal Arbitration Act after arbitration—not, for example, as an infringement suit stayed pending arbitration. For Acorda's case to arise under federal patent law, therefore, Acorda's operative petition for the federal-court case had to come within the small, second category of cases nonetheless arising under federal patent law. For Acorda's claim to come within that category, it had to involve a federal patent-law issue that was "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *see MPHJ*, 803 F.3d at 645; *NeuroRepair, Inc. v. The Nath Law Group*, 781 F.3d 1340, 1344 (Fed. Cir. 2015).

Because Acorda initiated the case to seek confirmation in part and modification in part of the arbitral award under, respectively, 9 U.S.C. § 207 (the chapter 2 counterpart of 9 U.S.C. § 9) and 9 U.S.C. §§ 10–11, we look not to the underlying claims made in the arbitration but only to the (never-amended) case-initiating document—the January 2023 Petition—to assess jurisdiction, consistent with the general rule that it is the filing that initiates the federal-court case (if never amended) that is determinative. *See Badgerow v. Walters*, 596 U.S. 1, 4–5, 9, 12, 14 (2022).[2] We

---

[2] The Supreme Court in *Badgerow* specifically ruled on petitions to confirm or vacate under 9 U.S.C. §§ 9, 10, but we see no basis for different treatment of a petition to modify under 9 U.S.C. § 11 (or to confirm under 9 U.S.C. § 207), whose wording is materially the same in relevant

conclude that a federal patent-law issue is not "necessarily raised" by the Petition, which therefore flunks *Gunn*'s first requirement. 568 U.S. at 258. That conclusion suffices for us to hold that we lack jurisdiction.

Acorda's request for confirmation of all but the recoupment denial did not necessarily raise a federal patent law issue. Under 9 U.S.C. §§ 9 and 207, a party to an arbitration is not required, in order to obtain confirmation of an award, to plead and prove the correctness of the rulings in the arbitral award. *See* 9 U.S.C. § 9 (stating that if the arbitration agreement provides "that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court," any party to the arbitration may apply for such confirmation within a year, and "the court must grant [a confirmation] order" unless the award is "vacated, modified, or corrected" under 9 U.S.C. §§ 10, 11); *id.* § 207 (stating that within three years of an arbitral award under the New York Convention, "any party to the arbitration may apply" for judicial confirmation, and "[t]he court shall confirm the award" unless it "finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention"); *Decision*, at *7. It was therefore no necessary part of Acorda's petition for confirmation to establish, or obtain a judicial determination on, any proposition of federal patent law.

Acorda's request for modification of the denial of recoupment of unprotested post-expiration payments, based on asserted manifest error, likewise did not "necessarily raise[]" an issue of federal patent law for decision. *Gunn*,

---

aspects as 9 U.S.C. §§ 9, 10, and lacking in the "distinctive language" of 9 U.S.C. § 4 that the Court had previously held to authorize looking through the case-initiating filing to the underlying arbitration in the context of petitions to compel arbitration. 596 U.S. at 5; *see also id.* at 9–11.

568 U.S. at 258. That request took as its premise the Tribunal's own determination of unenforceability, which Acorda sought to be confirmed (as just explained) without needing to have the court evaluate its correctness. The only aspect of the modification request for which Acorda sought a judicial determination was the assertion of error in denying the recoupment remedy. But on the question of remedy, as described above, Acorda presented two alternative grounds as establishing manifest error, and only one—based on *Brulotte*—rested on federal patent law. Acorda asserted a second, undisputedly non-patent-law basis for entitlement to the recoupment remedy it sought—a principle of law for which it cited *Kaiser Steel* and *McMullen* (neither being a patent-law case).

Acorda thus presented a way for the district court to rule in its favor on the requested recoupment remedy without agreeing with Acorda's assertion that federal patent law entitled it to that remedy. In that circumstance, as we have held, the asserted patent-law issue was not "necessarily raised." *See Inspired Development Group, LLC v. Inspired Products Group, LLC*, 938 F.3d 1355, 1362–63 (Fed. Cir. 2019) (finding issue not necessarily raised where alternative ground for relief presented); *NeuroRepair*, 781 F.3d at 1344–45 (same). Acorda's case-initiating filing therefore did not meet the "necessarily raised" requirement for our jurisdiction. *See Inspired Development*, 938 F.3d at 1362 ("All four elements [of *Gunn*] must be satisfied.").

In light of this conclusion, we need not rule on whether we might lack jurisdiction for additional reasons. One such possibility, debated by the parties, focuses on the facts (a) that neither *Brulotte* nor *Kimble*, in addressing the patent-law right, discussed any issue about a backward-looking remedy, *cf. eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006) (stating that "the creation of a right is distinct from the provision of remedies for violations of that right"), and (b) that the *Brulotte*-based remedy issue raised by Acorda is presented in the context of the "extremely

deferential" standard of "manifest disregard" applicable to arbitral-award reviews, *Smarter Tools Inc. v. Chongqing SENCI Import & Export Trade Co.*, 57 F.4th 372, 378, 383 (2d Cir. 2023); *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110–11 (2d Cir. 2006); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933–34 (2d Cir. 1986). Such facts raise questions about whether an issue of federal patent law that must be decided in the case is "substantial in the relevant sense," an inquiry focused on "the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. Alkermes points to *Friedler v. Stifel, Nicolaus, & Co.*, 108 F.4th 241, 246–47 (4th Cir. 2024), a non-patent case, in which the Fourth Circuit relied on the limits of "manifest disregard" review to conclude that the *Gunn* standard for federal "arising under" jurisdiction was not met in an arbitral-award review involving asserted violations of federal securities law. Alkermes's Opening Supplemental Br. at 1–2, 5–7. But we need not decide whether or how *Friedler*'s logic would apply in assessing the "substantial[ity]" of the patent-law aspect of the present case under *Gunn*, whether *Friedler* more generally should be endorsed by this court, and other issues that might be raised about application of the *Gunn* standards. The narrow ground we have set out suffices to support our conclusion that we lack jurisdiction.

III

We hold that we lack jurisdiction over the present appeal. The case is transferred to the United States Court of Appeals for the Second Circuit.

The parties shall bear their own costs.

**TRANSFERRED**